# MAMMOTH MINING COMPANY *v.* SALT LAKE FOUNDRY AND MACHINE COMPANY.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

No. 181. Submitted December 21, 1893. — Decided January 29, 1894.

When the Supreme Court of a Territory, in a suit in the nature of an equity suit, determines that the findings of the trial court were justified by the evidence, this court is limited to the inquiry whether the decree can be sustained on those findings, and cannot enter into a consideration of the evidence.

The admission of evidence, under exceptions, complained of did not constitute reversible error.

TAYLOR and another brought suit against the Mammoth Mining Company in the District Court of the First Judicial District of Utah Territory to foreclose a mechanics' lien under the statute of Utah in that behalf, and the Salt Lake Foundry and Machine Company, having been made a party defendant, filed its cross complaint therein against its codefendant, the Mammoth Mining Company, for the enforcement of a similar lien for materials furnished and work done in and about the construction of certain buildings of the mining company, and situated on its land and premises. The Mammoth Mining Company did not deny that the materials were furnished and the work done, but insisted that this was not under any contract between it and the foundry company or at its request. The cause was heard by the court, without a jury, which made the following findings of fact and conclusions of law:

"1. That at all the times hereinafter stated the said Salt Lake Foundry and Machine Company and the said Mammoth Mining Company were corporations, organized and existing under the laws of Utah Territory.

"2. That on the — day of January, A.D. 1883, the said Salt Lake Foundry and Machine Company contracted with the said Mammoth Mining Company, through its agents, to furnish to

said Mammoth Mining Company castings, to construct and repair machinery at current prices, and to do other work within the scope of said machine company's business, all of which was to be used and was used by the said mining company in the erection and construction of the refineries, mills, brick kilns, and smelters of the said defendant mining company, which said refineries, mills, brick kilns, and smelters were situate upon the southeast quarter of the northeast quarter of the southeast quarter of section twenty-one (21) and the northwest quarter of section twenty-two (22) in township eleven (11) south of range three (3) west of Salt Lake meridian in Juab County, Utah.

"3. That in pursuance of said contract, the said foundry and machine company from time to time from said — day of January, A.D. 1883, until the 26th day of March, A.D. 1883, furnished castings, made and repaired machinery, worked for and furnished material to the said Mammoth Mining Company to be used in the construction of the buildings, etc., above referred to at the special instance and request of said company.

"4. That the total value of the materials furnished, and work done so as aforesaid was thirty-six hundred and six and $\frac{4}{100}$ dollars at the prices agreed upon between the said mining company and the said foundry and machine company.

"5. That no part of said sum has been paid excepting the sum of five hundred (500) dollars and the balance thereof to wit the sum of $3106.04 *dollars* remains due and unpaid, together with interest thereon at the rate of ten (10) per cent per annum from the said 26th day of March, A.D. 1883.

"6. That on the 27th day of March, A.D. 1883, the said Salt Lake Foundry and Machine Company caused to be recorded in the office of the county recorder of Juab County, Utah, their claim for a lien on the premises above described, containing a statement of its demand after deducting all just credits and offsets, with the name of the owner, to wit, the said Mammoth Mining Company, and a statement of the time given, terms and conditions of the contract and a description of the premises sought to be charged with the lien, the facts stated

in said notice of lien being in all respects the facts set forth in the foregoing findings of facts.

" 7. That this action was brought to foreclose said lien within the time allowed by law for that purpose.

" From the above findings of facts the court finds the following conclusions of law :

" 1. That the said Salt Lake Foundry and Machine Company is entitled to a judgment against the said Mammoth Mining Company in the sum of three thousand one hundred and six and $\frac{4}{100}$ ($3106.04) dollars with interest thereon, from March 26, 1883, at the rate of ten per cent per annum, amounting in all to the sum of five thousand and eleven and $\frac{54}{100}$ ($5011.54) dollars, and for costs of this suit and that execution issue therefor.

" 2. That said Salt Lake Foundry and Machine Company is also entitled to a decree establishing the said judgment as a lien upon the premises mentioned in the complaint and findings heretofore filed, and foreclosing the same according to the law and practice of this court."

Decree having been entered accordingly, the case was carried by appeal to the Supreme Court of the Territory, where errors were assigned to the sufficiency of the evidence to sustain the special findings, and to the admission of certain evidence, and the allowance of certain questions against defendant's objection. The Supreme Court held that the evidence justified the findings, and that there was no error in the rulings in relation to the testimony, and affirmed the decree. 6 Utah, 351.

Thereupon an appeal was taken to this court, and like errors assigned here.

*Mr. C. W. Bennett* and *Mr. J. G. Sutherland* for appellant.

*Mr. Arthur Brown* for appellee.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

1. This proceeding to enforce a mechanics' lien under the statute of the Territory of Utah was in the nature of a suit in equity, and was tried by the court without a jury. The Supreme Court, in affirming the judgment, has determined that the findings of the trial court were justified by the evidence, and, apart from exceptions duly taken to rulings on the admission or rejection of evidence, our examination is limited to the inquiry, without reference to the weight of evidence or its sufficiency to support the special findings, whether the decree can be sustained upon those findings. *Idaho & Oregon Land Company* v. *Bradbury*, 132 U. S. 509, 515; *Stringfellow* v. *Cain*, 99 U. S. 610; act of April 7, 1874, c. 80, 18 Stat. 27. Of this there can be no doubt. Defendant contended that the material was furnished to and the work done for one Butler Johnstone, or Johnstone and one Bowers, and not to or for the defendant, or upon its credit. And the question was whether Johnstone and Bowers (either or both) were authorized to contract for and in the name of the defendant, or had such apparent authority as to justify plaintiff in the belief that they had authority in fact, and that it delivered the material and did the work, relying in good faith thereon. *United States Bank* v. *Dandridge*, 12 Wheat. 64; *Bronson's Executor* v. *Chappell*, 12 Wall. 681; *Mining Company* v. *Anglo-Californian Bank*, 104 U. S. 192. Under the special findings the conclusion of liability followed, whether resting on one ground or the other.

2. It is urged that the principal error of the courts below consisted in ignoring the operation of certain written contracts, introduced in evidence, dated January 7 and November 1, 1882, between stockholders of the company and Bowers, and assigned in part to Bowers. The first of these contracts provided for the sale of something over three hundred and ninety-two thousand of the four hundred thousand shares constituting the capital stock of the defendant corporation, to Bowers, and the second was a modification of the first. By these contracts, Bowers agreed, among other things, to build smelting furnaces and refining works and machinery at his own expense, and it is claimed that under them Bowers and Johnstone obtained

possession of the company's properties and a right to work its mines, but upon their own sole credit and not that of the company. The contract of January 7 was shown to have been assented to and the transfer of the property authorized by the company, and without entering upon an examination of the contracts themselves, it is enough that the findings involve the conclusion that the plaintiff had no notice of their existence, and was not, therefore, bound by any limitations therein contained. The question remained the same, did plaintiff furnish the materials and labor to persons acting in the name of the company and upon the belief that its contract was with the company, and as the trial court found that, it necessarily found that plaintiff was unaffected by these contracts. The Supreme Court held to this effect, and said that "if this were a private agreement between certain stockholders of appellant as to who should pay for improvements made on its property, made in its name and for its benefit, it will not avail to defeat the claims of the respondent, unless notice of this agreement was given to respondent before the material was furnished and labor done; that it would not be liable for this material and labor, although done in its name. On this point the evidence is conflicting, and the court below found for respondent, or it could not have given judgment in its favor." Although we, are bound by the findings as made, we deem it not improper to yield to the argument for appellant so far as to express our concurrence in this view.

3. As to the errors assigned in that court to the admission of evidence, the Supreme Court observed: "These errors are not available in a case in equity, for the chancellor is supposed only to act on proper evidence. There is no question of law involved, only questions of fact; and if the proper evidence justifies the decree, the judgment ought to be affirmed, and we think it does." In its assignment of errors here, appellant specifies substantially the same exceptions to the admission of evidence, including the overruling of defendant's objections to questions. The evidence thus objected to was cumulative in its character and not of controlling importance, and if excluded, it is sufficiently clear that the result would not have been other-

wise. than it was. All the evidence is in the record, and we have carefully examined it, and, as we are of opinion that the rulings complained of, if erroneous, did not constitute reversible error, we need not pass upon their correctness, though we are not to be understood as intimating that the objections should in any instance have been sustained.

*Decree affirmed.*