### WARE et al. v. PEARSONS et al.†

(Circuit Court of Appeals, Eighth Circuit. October 11, 1909.)

1. GAMING (§ 14*)—"WAGERING CONTRACTS" FOR DEALING IN GRAIN.

An express agreement in advance between grain brokers and a customer that no grain was to be delivered or received on his contracts, but that the transactions were entirely on margin, and·settlements to be made between them on differences in the market, rendered such contracts void as "wagering contracts," and unenforceable in an action by the brokers against the customer, although the customer's orders may in fact have been executed on the exchange by actual purchases from or sales to third

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied December 18, 1909.

persons, who dealt with the brokers as principals without any knowledge of the customer.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 25, 26; Dec. Dig. § 14.*

For other definitions, see Words and Phrases, vol. 8, pp. 7365-7368, 7831.]

**2.** PRINCIPAL AND AGENT (§ 123*)—AUTHORITY OF AGENT—EVIDENCE CONSIDERED.

Evidence *held* to sustain a finding by a jury that a manager placed by a firm of brokers in charge of a branch office, and who in fact made illegal contracts with a customer, which were executed by the firm, had authority to act for it in agreeing with the customer that there should be no actual delivery or receipt of grain on his contracts.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 123.*]

**3.** APPEAL AND ERROR (§ 263*)—REVIEW OF INSTRUCTIONS—NECESSITY OF EXCEPTIONS.

Alleged inconsistencies between instructions cannot be availed of in an appellate court as a ground of reversal, unless they were called to the attention of the trial court by an exception.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516-1532; Dec. Dig. § 263.*]

**4.** APPEAL AND ERROR (§ 1053*)—REVIEW—HARMLESS ERROR—EVIDENCE—EFFECT OF WITHDRAWAL FROM JURY.

Where testimony improperly admitted was readily separable from all other testimony, and was by the court on its own motion stricken out, and the jury charged in clear and unequivocal language to disregard it, the error in its admission was cured.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178-4184; Dec. Dig. § 1053;* Trial, Cent. Dig. § 977.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Action by John H. Ware, Edward F. Leland, G. W. Lee, and F. J. Fahey, partners as Ware & Leland, against John H. Pearsons and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

D. M. Kirton (D. M. Kelleher and Maurice O'Connor, on the brief), for plaintiffs in error.

M. F. Healy (Robert Healy, Thomas D. Healy, and W. S. Kenyon, on the brief), for defendants in error.

Before HOOK and ADAMS, Circuit Judges, and PHILLIPS, District Judge.

HOOK, Circuit Judge. The firm of Ware & Leland sued Pearsons to recover commissions and moneys advanced in various grain transactions alleged to have been executed by them as brokers at his direction. The defense of Pearsons was that it was the intention of both parties not to deal in the actual grain, but, on the contrary, to gamble on the rise and fall of the market by settling their gains and losses by the difference between the contract price and the market value at the times fixed for delivery. Chicago Board of Trade v. Christie Grain Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031; Embrey v. Jemison, 131 U. S. 336, 9 Sup. Ct. 776, 33 L. Ed. 172; Irwin v. Williar,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

110 U. S. 499, 4 Sup. Ct. 160, 28 L. Ed. 225. There was a verdict and judgment for the defendant.

It may be assumed as claimed by the plaintiffs that the evidence showed that the orders given by defendant were in fact executed by them on the Chicago Board of Trade and the Milwaukee Chamber of Commerce, according to the rules of those exchanges, by making sales to and purchases from other persons doing business there; also that the intention of such other persons not to deal in the actual grain was not shown, and presumptively their intent was otherwise. If this was all there was to the case, the plaintiffs should have prevailed, because the mere intent of the defendant to engage in gambling, without a like intent on the part of those with whom he dealt, is not sufficient to condemn the transactions. Cases supra, and Clews v. Jamieson, 182 U. S. 461, 489, 21 Sup. Ct. 845, 45 L. Ed. 1183. It was claimed, however, by defendant, that he had an express agreement with E. A. Armstrong, plaintiffs' manager, that no grain was to be delivered or received, but that, on the contrary, "if he lost his account would be debited, and if he won it would be credited, or he would get a check immediately if he wanted it"—in other words that whatever plaintiffs might do with others, yet as between them and the defendant there was to be no dealing in actual grain, but a mere course of wagering and settlement according to differences. Whether this agreement was made was the principal question submitted to the jury, and there was substantial evidence supporting their finding for the defendant. So, if Armstrong had authority to bind plaintiffs to such an agreement, it would appear that in this instance their business was so conducted that they stood towards defendant as principals contracting, or rather wagering, with him in their own behalf, and therefore the intent of those they dealt with on the exchanges, whether lawful or unlawful, would be immaterial.

The plaintiffs' headquarters for their grain business were in Chicago, Ill., but they maintained an office at Ft. Dodge, Iowa, in charge of Armstrong as local manager. It was at this office and with Armstrong that defendant dealt. His name did not appear upon the books of the firm in Chicago, and the various persons with whom plaintiffs' transactions were had on the exchanges knew the plaintiffs only, not the defendant. As to Armstrong's authority, Mr. Leland, one of the plaintiffs, testified:

"He there [at Ft. Dodge] represents the firm of Ware & Leland as manager, and in soliciting orders, receiving money, carrying accounts, and things of that kind, he has the same power and authority as if one of the firm were there. He has full authority as manager of that branch of our office."

And it also appeared that his authority was not restricted to dealings in actual grain, but extended to wagering contracts, which were contrary to law. Embraced in plaintiffs' demands were items for moneys claimed to be due upon transactions commonly termed "puts and calls." These transactions were in the form of written offers to contract for the purchase or sale of grain at a designated price, with an agreement to leave the offers open for acceptance until a specified hour for a paid consideration equal to one-tenth of a cent per bushel of grain. Whether the trial court was entirely right in charging generally that

these were mere wagers upon the fluctuations of the market need not be determined. At least such of them as were executed in Chicago were forbidden by the law of Illinois, and we refer to them here simply as bearing upon Armstrong's authority to make the agreement it is claimed he made, and as showing plaintiffs knew of and adopted acts of his that were in accord with what defendant claimed was expressly agreed upon. Section 130 of the Criminal Code of Illinois provides:

"Whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain or other commodity * * * shall be fined not less than $10, nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts and shall be void."

We think it clear that the "puts and calls," so termed, were within the prohibition of this statute. Schneider v. Turner, 130 Ill. 28, 22 N. E. 497, 6 L. R. A. 164. And see Booth v. People, 186 Ill. 45, 57 N. E. 798, 50 L. R. A. 762, 78 Am. St. Rep. 229; Booth v. People, 184 U. S. 623, 22 Sup. Ct. 425, 46 L. Ed. 623. It therefore appears that by an express agreement between plaintiffs' authorized manager and the defendant there was introduced into all of the transactions, most of which might otherwise have been upheld, an element not countenanced by the law. Though a broker who receives orders from his customer makes corresponding lawful sales and purchases upon a Board of Trade of which he is a member, towards the other members of which he stands as a principal, yet if he agrees in advance with his customer that the latter shall be under no duty to receive or deliver the commodity to be dealt in, but that, as between them, the transactions shall be settled according to the differences between contract and market prices, no obligation arises that is enforceable in a court of justice. They are held to have engaged in wagering upon the rise and fall of the market. The verdict, therefore, established that there was an agreement between the defendant and Armstrong, the duly authorized agent of plaintiffs, that all the transactions, whether "puts and calls" or not, should be mere wagers and not bona fide dealings in grain. In this view of the case which clearly presents itself, many of the assignments of error are unimportant and need not be considered.

Complaint is made that the trial court charged the jury that the burden was on the plaintiffs of proving by a fair preponderance of the evidence that defendant employed them to make actual purchases and sales of grain for future delivery, and also of proving that they accordingly made such actual purchases and sales. But the court in the same connection made it clear that in that matter the plaintiffs were entitled to the presumption that their dealings were valid, and the burden of showing they were wagering was on the defendant. If there was an inconsistency in the charge in this particular, which might have confused the jury, it is sufficient to say the court's attention was not directed to it by an exception, and it is not available here as a ground of error.

Testimony was improperly admitted, over plaintiffs' objection, showing the habit of defendant as to the excessive use of intoxicating liquors. This was upon the theory that being known to Armstrong, it bore upon the claim that he also knew defendant's intention was to

wager, not to deal in actual grain. But before the close of the case the court perceived the error, and then excluded and struck from the record the testimony "as to the habits of Mr. Pearsons and the use of intoxicating liquors," as given by the witness from whom it was elicited. The court of its own motion again referred to the subject in its charge, and said to the jury:

"That testimony was subsequently stricken out and it is not before you. You will therefore determine this case as though that testimony had not been admitted before you."

The improper testimony was of such a character, and was so given, that it was readily separable from the other testimony given at the trial, and the words of the court in excluding it and in directing the jury to disregard it, were clear and unequivocal. The jury could have had no difficulty in extracting it from the evidence and laying it aside as not to be considered. We think that the language of the court was sufficiently comprehensive to exclude all that was objectionable, and that whatever injury was done was cured. Turner v. American Security & Trust Co., 213 U. S. 257, 267, 29 Sup. Ct. 420, 53 L. Ed. 788; Hopt v. Utah, 120 U. S. 430, 438, 7 Sup. Ct. 614, 30 L. Ed. 708; Pennsylvania Co. v. Roy, 102 U. S. 451, 458, 26 L. Ed. 141.

In the view we take of the case, there is nothing further that requires attention.

The judgment is affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes