OATES v. UNITED STATES, and three other cases.

(Circuit Court of Appeals, Fourth Circuit. May 2, 1916.)

Nos. 1417–1420.

**1. APPEAL AND ERROR ☞1053(2)—REVIEW—HARMLESS ERROR.**

Even in a jury trial, the admission of incompetent evidence will be regarded as harmless error, if the jury are instructed to disregard it, unless the evidence was so impressive that it probably affected the verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4179; Dec. Dig. ☞1053(2); Trial, Cent. Dig. § 977.]

**2. CONTEMPT ☞66(8)—REVIEW—NEW TRIAL—INCOMPETENT EVIDENCE.**

In a contempt case, tried to the judge, the erroneous admission of incompetent evidence does not necessitate new trial, and it is sufficient protection to defendants, if the reviewing court reverse the judgments and direct the trial judge to reconsider the proceedings and indicate what incompetent evidence it disregarded.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213, 215, 232; Dec. Dig. ☞66(8).]

**3. EVIDENCE ☞43(3)—JUDICIAL NOTICE.**

The court may take judicial notice of an injunction order which defendants were charged with having violated, and a reference thereto in a judgment in contempt proceedings is unnecessary.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 64; Dec. Dig. ☞43(3).]

**4. CONTEMPT ☞66(3)—REVIEW—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.**

Where judgments in contempt proceedings were reversed, and thereafter the trial court on reconsideration indicated what evidence it rejected as incompetent, defendants, if desirous of the rejection of other evidence, should call it to the attention of the court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. § 229; Dec. Dig. ☞66(3).]

**5. CONTEMPT ☞66(7)—REVIEW—HARMLESS ERROR.**

In contempt proceedings, where there were findings showing defendants' guilt, the fact that the trial court made immaterial findings is not prejudicial.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 232–237; Dec. Dig. ☞66(7).]

**6. CONTEMPT ☞60(3)—CRIMINAL CONTEMPT—EVIDENCE.**

To convict of criminal contempt, the trial court must be convinced of the guilt of accused beyond a reasonable doubt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 185–187; Dec. Dig. ☞60(3).]

**7. CONTEMPT ☞66(7)—REVIEW—FINDINGS.**

In criminal contempt, a finding of the trial court on conflicting evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 232–237; Dec. Dig. ☞66(7).]

**8. INJUNCTION ☞223(2)—VIOLATION—CONTEMPT.**

Where all the defendants were enjoined from using threats, force, intimidation, or persuasion to induce an employer's servants to break their contract or leave their work, defendant, who with a number of strikers went on a ferryboat upon which there were employés, with the intention of persuading them to quit, and, if they failed, to fight them, defendant

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was guilty of contempt in violating the injunction, though the employés were removed from the boat to avoid friction.

[Ed. Note.—For other cases, see Injunction, Dec. Dig. ☞223(2).]

9. CONTEMPT ☞58(3)—PURGING CONTEMPT—MODE OF.

Where defendants did not deny the contempt charged, but merely put in a plea of not guilty and went to trial on that, they did not purge themselves of any contempt in violating the injunction.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 172, 173; Dec. Dig. ☞58(3).]

10. CONTEMPT ☞58(3)—PURGING CONTEMPT—MODE OF.

A defendant, who by personal and overt acts violates an injunction, cannot purge himself of his contempt by a denial under oath of the contempt charged.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 172, 173; Dec. Dig. ☞58(3).]

11. CONTEMPT ☞68—PROCEEDINGS—IMPOSITION OF COSTS.

Under Rev. St. § 974 (Comp. St. 1913, § 1615), providing that, on every conviction for any offense not capital, the court may in its discretion award that defendant shall pay the costs of the prosecution, costs may be assessed against defendant, convicted in a criminal contempt proceeding, regardless of Judicial Code, § 268 (Comp. St. 1913, § 1245), authorizing punishment by fine and imprisonment.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 238–241; Dec. Dig. ☞68.]

12. CONTEMPT ☞66(7)—REVIEW—HARMLESS ERROR—ADMISSION TO BAIL.

In criminal contempt proceedings, where the writ of error was granted and defendants were admitted to bail on the same day sentence was pronounced, they cannot complain that the trial court refused to suspend sentence pending application for a writ of error.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 232–237; Dec. Dig. ☞66(7).]

13. INJUNCTION ☞232—CRIMINAL CONTEMPT—SENTENCE.

In proceedings for contempt for violating an injunction, the sentence is within the discretion of the trial court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 519–528; Dec. Dig. ☞232.]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

James Oates, Frank Ledvinski, Hiram Stephens, and Fanny Sullens were found guilty of contempt in violating an injunction, and they bring error. Affirmed.

See, also, 223 Fed. 1013, 139 C. C. A. 389.

John C. Palmer, Jr., and Joseph R. Curl, both of Wheeling, W. Va., for plaintiffs in error.

Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., and John A. Howard, of Wheeling, W. Va., for the United States.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

WOODS, Circuit Judge. In these contempt proceedings the plaintiffs in error, defendants below, were found guilty of violation of a temporary restraining order of September 29, 1913, made in the case

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of West Virginia-Pittsburgh Coal Company v. John White et al. The tenor of the order was to enjoin interference with plaintiff's business by using threats, force, intimidation, or persuasion to induce its employés to break their contracts or leave their work, or by using like means to induce any person to refuse to accept employment with plaintiff, and to enjoin trespassing on plaintiff's premises for the purposes above indicated. The District Judge made specific findings of a number of acts of disobedience of the order by each of the parties charged, and the sentence imposed on each defendant was the payment of costs and imprisonment for six months.

This court reversed the judgment for the following reasons: First. Incompetent evidence was received; although the District Judge recited in his decree that his findings were based on "the legal evidence produced at the trial, rejecting all improper and irrelevant parts thereof," it was impossible for this court to say what testimony the District Court ultimately rejected, and whether any of the incompetent testimony influenced his findings as to the extent of the punishment inflicted. Second. The District Judge, as one of the grounds of his findings, took judicial notice of certain propositions of law laid down by the District Court in the case of Hitchman Coal & Coke Co. v. Mitchell et al., 202 Fed. 512, which were afterwards held by this court' to be erroneous. Third. The District Court imposed a general sentence for the separate acts of contempt alleged and found against the defendants, whereas, under the rule laid down in Gompers v. Buck's Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, the punishment for the different offenses should have been so separated that this court could analyze the evidence and determine which, if any, of the charges were sustained. It was accordingly adjudged that:

"The judgment of the District Court must be reversed, and the causes remanded, so that the District Judge may reconsider them, indicating in his findings the evidence rejected as hearsay, announcing his conclusions of fact in view of the judgment of this court in Hitchman Coal & Coke Co. v. Mitchell et al., supra, and imposing sentence in accordance with the view of the Supreme Court of the United States in Gompers v. Buck's Stove & Range Company, supra."

At a subsequent hearing the District Court indicated plainly the testimony struck out as incompetent, and on the remaining evidence made the following definite findings of violations of the order of injunction against the plaintiffs in error:

"That the defendant James Oates did, by establishing and maintaining a camp near the West Virginia-Pittsburgh Coal Company's Locust Grove mine, occupied by turbulent, disorderly men, intimidate the said company employés at said mine, in violation of the injunction and restraining order, with full knowledge of said injunction.

"That the defendant James Oates did, at the strikers' headquarters at Wellsburg, advise and incite the strikers there assembled to prevent the employés of the West Virginia-Pittsburgh Coal Company from working at the La Belle mine, by assaulting and beating them, and he did thereby incite the said strikers to acts of violence in violation of the injunction and the restraining order, with full knowledge of said injunction.

"That the defendant Hiram Stephens did, in company with the other strikers, follow a number of the employés of the West Virginia-Pittsburgh Coal

Company's employés to the ferryboat at Wellsburg, when they were returning from work at the said company's mine, and attempted to intimidate them, in violation of the injunction, and that he then knew of the said injunction.

"That the defendant Hiram Stephens did also participate in a procession of 150 or more men and women carrying a flag and singing ribald songs, who marched from Wellsburg to the West Virginia-Pittsburgh Coal Company's mines at Colliers, known as its Locust Grove mine, for the purpose of intimidating said company's employés employed at the said mine, in violation of the injunction, and that he then knew of the injunction.

"That the defendant Frank Ledvinski did, at the strikers' headquarters at Wellsburg, advise the strikers there assembled to prevent the employés of the West Virginia-Pittsburgh Coal Company from working at its La Belle mine, by assaulting and beating them, and he did thereby incite the said strikers to acts of violence in violation of the injunction and restraining order, and with full knowledge thereof.

"That the defendant Fanny Sullens led a mob of about 150 men to a road leading to the mine of the West Virginia-Pittsburgh Coal Company, known as the Gilchrist mine No. 3, for the purpose of intercepting said company's employés and assaulting them, in violation of the injunction, and that she then knew of said injunction."

Fanny Sullens was found guilty of the following charge also:

"The said Fanny Sullens has, during nearly all of the time the said restraining order and the said temporary injunction has been in force, with full knowledge of the said restraining order and of said temporary injunction, resorted to the camp maintained by James Oates and others near your petitioner's Locust Grove mine at Colliers, Brooke county, W. Va., and has aided in inciting of force in the camp there, to force, violence, threats, intimidation, and assaults against your petitioner's employés at its said mine, and against other mine workers desiring to enter your petitioner's service at its said mine. The said Fanny Sullens has also been during nearly all of the said time with James Oates and others, aiding him, and has aided and assisted them, in inciting a force of men at Wellsburg, W. Va., to resort to force, threats, violence, intimidation, and actual assaults against your petitioner's employés at its two mines near Wellsburg, W. Va., and against other mine workers desiring to enter the service of your petitioner at its said two mines near Wellsburg."

The court then sentenced each of the defendants to imprisonment for six months and payment of costs; a separate sentence being imposed for each offense found. The marshal was directed in the execution of the sentences to allow credit for the time which each of the defendants had been imprisoned under the sentences passed on April 25, 1914, set aside on writ of error.

[1, 2] By the first assignment of error the point is made that, this court having found when the cases were here before that incompetent evidence was admitted, the error could be corrected only by a new trial, and that the judgment of this court should have been construed as requiring a new trial. It is established by authority from which there is no dissent that even in a jury trial admission of incompetent evidence will generally be regarded harmless error, if the jury are instructed to disregard it. N. Y. & W. R. Co. v. Madison, 123 U. S. 524, 8 Sup. Ct. 246, 31 L. Ed. 258; Hopt v. Utah, 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708; Turner v. Am. S. Co., 213 U. S. 257, 29 Sup. Ct. 420, 53 L. Ed. 788. The exception to this rule is that the incompetent evidence will be regarded harmful, notwithstanding its subsequent withdrawal from the jury, if it was so impressive that it probably remained on the mind of the jury and influenced their finding.

Hopt v. Utah, supra; Armour v. Kollmeyer, 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (N. S.) 1110; Chicago Ry. Co. v. Newsome, 174 Fed. 394, 98 C. C. A. 1; Knickerbocker T. Co. v. Evans, 188 Fed. 549, 110 C. C. A. 347. For a greater reason, when a case is tried without a jury, the error of admitting incompetent evidence will be regarded harmless, if it is rejected and excluded by the judge before the decision is made. The only valid ground of complaint was the failure of the District Judge to indicate the particular testimony rejected. A new trial was not necessary to correct that error, for the only purpose of the correction was to enable this court to review the findings of the District Court more intelligently.

Indeed, had the admission of incompetent testimony been the only matter involved when the cases were here before, this court would not have been justified in sending the cases back for the correction of that error; it would have been our duty to review the record and decide whether there was sufficient competent testimony to support the judgments. When a judge hears a case without a jury, he is supposed to act only on proper evidence, and if on review it is found that the evidence properly admitted justifies the decree it ought to be affirmed, and if not it ought to be reversed. Weems v. George, 13 How. 196, 14 L. Ed. 108; Mammoth Min. Co. v. Salt Lake Machine Co., 151 U. S. 447, 14 Sup. Ct. 384, 38 L. Ed. 229; West v. East Coast Cedar Co. (C. C.) 110 Fed. 725; Streeter v. Sanitary Dist. of Chicago, 133 Fed. 124, 66 C. C. A. 190; Ware v. Pearsons, 173 Fed. 878, 98 C. C. A. 364. In all these and many other cases the rule laid down by Chief Justice Marshall in Field v. United States, 9 Pet. 202, 9 L. Ed. 94, has been followed:

"As the cause was * * * not tried by a jury, the exception to the admission of evidence was not properly the subject of a bill of exceptions. But if the District Court improperly admitted the evidence, the only effect would be that this court would reject that evidence, and proceed to decide the cause as if it were not on the record. It would not, however, of itself constitute any ground for a reversal of the judgment."

The wisdom of the rule that a new trial is not to be granted because of the admission of incompetent evidence, when the trial is by the judge without a jury, is forcibly illustrated by the cases now before us. The testimony had been taken by the District Judge, and he had made his findings on what he regarded the competent testimony. Had this court determined that certain testimony should have been excluded and the cases sent back for a new trial, the parties would have been put to the expense and trouble of producing all of the witnesses before the same judge, who would have excluded the testimony found by the appellate court to be incompetent. It is manifest that the same result was effected by striking from the record as it stood all of the incompetent evidence and leaving the competent evidence for consideration. Any impression made by the incompetent evidence could not have been better effaced by a new trial than by excluding it from consideration.

The action of this court in directing that the District Judge indicate the testimony designated as incompetent was taken in abundance, if not excess, of consideration for the rights of the defendants, because the liberty of citizens was involved, and because there were findings of

fact requiring reconsideration and restatement by the District Judge before passing sentence. There was no reason for a new trial, and no principle of law would have justified it.

[3] By the next assignment of error it is charged that in saying that the bill and orders in West Virginia-Pittsburgh Company v. White et al. "are now made a part of these findings of fact," the trial judge meant to take the allegations of the bill as evidence. The misapprehension of counsel is obvious. The court only meant to refer to the existence of the bill and orders as the basis of the contempt proceedings. Even that reference to the records was unnecessary, since the court was authorized to take judicial notice of them. Schwartz v. United States, 217 Fed. 866, 133 C. C. A. 576.

[4] The third assignment of error is as follows:

"The court erred in admitting to hearing of the trial judge during the trial of this case a large amount and mass of irrelevant, improper, and prejudicial evidence, the admission of which evidence tended to prejudice and improperly affect the mind of the trial court and to interfere with a fair consideration of all the legitimate evidence in the case."

As we understand, this means that the court should have rejected portions of the testimony in addition to that which was rejected. It is sufficient to say that the District Judge, in disposing of the cases and pronouncing judgment, indicated plainly the portions of the testimony rejected as incompetent. Any other portions of the testimony, which counsel thought should be rejected, should have been called to the attention of the court, and the point raised by exception.

[5] Even if there had been findings of fact not relevant and pertinent to the charges against the defendants, as charged in a general way in the fourth assignment, such findings could not be prejudicial.

[6, 7] To convict in a case of criminal contempt, the trial court must must be convinced of the guilt of the accused beyond a reasonable doubt; but when there is evidence tending to show guilt the finding of fact by the District Court cannot be reviewed by this court. Bessette v. Conkey Co., 194 U. S. 338, 24 Sup. Ct. 665, 48 L. Ed. 997; Schwartz v. United States, supra. While there was conflict of evidence, there could be no serious claim of absence of evidence supporting the specific findings against James Oates, Fanny Sullens, and Frank Ledvinski.

[8] The contention was seriously made, however, that there was no proof of the first finding against Hiram Stephens. The testimony was that Stephens and several other strikers went on the ferryboat on which a number of the employés of the Coal Company were to cross the Ohio river, with the intention of persuading them to quit, and, if that failed, to fight them, and that on this demonstration of the strikers, but before they had commenced to persuade or threaten by words, the foreman called his men off the boat. The demonstration was made as a method of persuasion or intimidation of the company's employés to induce them to quit work, and it was clearly so understood by at least one of the company's employés, the foreman in charge of its men. The participation of Stephens in this expedition and demonstration was therefore a violation of the terms of the injunction.

[9] The ground upon which the defendants mainly rely for reversal

is that they purged themselves of the contempt by a sworn denial of the essential elements of the offenses charged. Numerous authorities, commencing with Blackstone, are cited in support of the position. According to these authorities, in criminal contempt the defendant was first to be interrogated or allowed to put in his formal answer denying the contempt charged. The denial under oath purged the contempt, and if the oath turned out to be false the only remedy was an indictment for perjury. The defendants did not bring themselves within this ancient rule, since they did not put in answers denying the contempt charged, but, on the contrary, merely put in the plea of not guilty and went to trial on that. In re Savin, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; Kirk v. United States, 192 Fed. 273, 112 C. C. A. 531. Besides, the point was not made by an exception.

[10] But, waiving all that, the Supreme Court of the United States has expressly held that the rule contended for has no application where the charge, as in these cases, is one of personal and overt acts. United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265; In re Savin, supra; Kirk v. United States, supra; United States v. Huff (D. C.) 206 Fed. 700.

[11] The next position taken is that the imposition of sentences of imprisonment, with payment of costs, was contrary to section 268 of the Judicial Code (Comp. St. 1913, § 1245) which authorizes punishment of contempt by fine or imprisonment. The contention is that both imprisonment and fine cannot be imposed, and that the requirement of payment of costs is the imposition of a fine. We think section 974 of the Revised Statutes is conclusive in favor of the right of the trial judge to require payment of costs in all criminal proceedings, not as a fine, but as an incident of the judgment of conviction. It provides:

"When judgment is rendered against the defendant in a prosecution for any fine or forfeiture incurred under a statute of the United States, he shall be subject to the payment of costs; and on every conviction for any other offense not capital, the court may, in its discretion, award that the defendant shall pay the costs of the prosecution."

While not deciding the point, this view is strongly intimated by the Supreme Court. In re Swan, 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207. The Circuit Court of Appeals of the Eighth Circuit has expressly decided the point contrary to the position of the defendants. Whitworth v. United States, 114 Fed. 302, 52 C. C. A. 214.

[12] Finally, error is assigned in the refusal of the court to suspend sentence and admit the defendants to bail pending the application for a writ of error. The objection is without substance, since the writ of error was granted and the defendants were admitted to bail on the same day the sentence was pronounced. The rule on the subject is thus settled in Hudson v. Parker, 156 U. S. 277, 15 Sup. Ct. 450, 39 L. Ed. 424:

"The statutes of the United States have been framed upon the theory that a person accused of crime shall not, until he has been finally adjudged guilty in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error."

See In re Claasen, 140 U. S. 200, 11 Sup. Ct. 735, 35 L. Ed. 409; Hardesty v. U. S., 184 Fed. 269, 106 C. C. A. 411; Ex parte Harlan (C. C.) 180 Fed. 119, affirmed 218 U. S. 442, 31 Sup. Ct. 44, 54 L. Ed. 1101, 2 Ann. Cas. 849; 2 Foster's Fed. Practice, 1652.

[13] It is hardly necessary to say that the sentences were within the discretion of the District Judge.

The record shows that the proceedings were conducted with the utmost care and pains, and rigid scrutiny of it discloses no error.

Affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes