## FANNING v. UNITED STATES.
### No. 3669.

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1934.

John R. Pendleton, of Princeton, W. Va., for appellant.

George I. Neal, U. S. Atty., of Huntington, W. Va. (Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., and Okey P. Keadle, Asst. U. S. Atty., of Huntington, W. Va., on the brief), for the United States.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

J. C. Fanning, sheriff of Mercer county, W. Va., was found guilty of contempt of court, and sentenced to four months imprisonment in the federal correctional camp at Lee Hall, Va., by the judge of the District Court of the United States for the Southern District of West Virginia, on February 22, 1934. From that judgment, he prosecutes this appeal.

The proceeding for contempt against Fanning was based on the escape of two federal prisoners from the Mercer county jail, of which jail Fanning, as sheriff of Mercer county, was the keeper. At the June term, 1933, of said court, William Mullins and William R. Albert were sentenced to imprisonment for five and three years, respectively, in the federal penitentiary at Atlanta, and were committed to the Mercer county jail to await transportation to the penitentiary. On August 3, 1933, these two prisoners, along with three state prisoners, made their escape from the Mercer county jail. One C. W. Thornton was one of the jailers in actual charge of the jail in the daytime. An information upon contempt was filed in said court against Fanning and Thornton, charging, as to the escape of Mullins and Albert, that said Fanning and Thornton were guilty of gross carelessness in permitting the escape and that their acts amounted to willful contempt.

Separate answers were filed to the information by Fanning and Thornton, in which the charges of misconduct against them were denied.

Upon the hearing of these charges before the judge of the court, evidence was heard on behalf of the United States and the defendants. At the conclusion of the trial, the judge below found that the appellant was guilty of willful carelessness and negligence with respect to five charges, as follows:

"First: That he put one comparatively old man, without any experience in that kind of work, in charge of a prison in which there was never less than a hundred and thirty-five, and usually more, prisoners at one time, all sentenced to jail or awaiting trial, or having been tried and sentenced and awaiting transportation to some penitentiary.

"Second: Instead of employing, out of the ample funds derived from the allowance

930

for the keeping and subsistence of prisoners, the proper persons for such duty; he,. by means of giving privileges, made some of them into so-called guards, under the name of 'trusties.'

"Third: Allowing the trusties virtually to have control of the jail and of its inmates, and to admit visitors to favored persons, like Albert and Mullins, at, practically speaking, any time they wanted to come in, and permitting special privileges to them when they got in.

"Fourth: In permitting visitors, whether on visiting days, or any other day, to come into the jail without proper search of the articles which they had, and without proper search of their respective persons for weapons, saws, jacks, or anything else that might be useful to the prisoners in escaping, or doing any other criminal act in the jail.

"Fifth: With full and complete knowledge of the outlaw reputation which Albert and Mullins were known to have, in not especially examining and testing the bars of the cells wherein they were incarcerated for the last week before their escape, and in not especially having the jailer, or some other officer, present at any conversation between them and any visitor, and in not making a full and complete search of every visitor coming to see them, and a full and complete search of every package of every kind that such visitors might want to deliver to them, or either of them."

As a conclusion of law, the court found both defendants guilty of contempt and sentenced the appellant.

There were three questions raised by the assignments of error. The first one to the effect that the court allowed evidence to be introduced that was irrelevant and immaterial and prejudicial to the appellant; the second to the effect that the court considered and made findings of gross negligence against Fanning upon charges not embraced in the information; and the third that the appellant was not guilty of the charges against him and not guilty of contempt of court and that the judge below should have sustained the motion to find the appellant not guilty.

As to the first point, that improper evidence was heard at the trial before the judge, an examination of the evidence leads us to the conclusion that little, if any, evidence was heard that did not have some direct bearing upon the management of the jail from which the prisoners escaped and that the evidence introduced was all more or less material upon the question as to whether appellant, as sher-

iff, charged under the law with the keeping of the jail as ex officio jailer, had performed his duty. But whether this be true or not, as was said by the Supreme Court in United States v. King, 7 How. 833, 854, 12 L. Ed. 934, and quoted with approval by Mr. Justice McReynolds in Sinclair v. United States, 279 U. S. 749, 49 S. Ct. 471, 477, 73 L. Ed. 938, 63 A. L. R. 1258:

"In some unimportant particulars, the evidence objected to was not admissible. But where the court decides the fact and the law without the intervention of a jury, the admission of illegal testimony, even if material, is not of itself a ground for reversing the judgment, nor is it properly the subject of a bill of exceptions. If evidence appears to have been improperly admitted, the appellate court will reject it, and proceed to decide the case as if it was not in the record."

This court said in the case of Oates v. United States, 233 F. 201, 205:

" * * * When a judge hears a case without a jury, he is supposed to act only on proper evidence, and if on review it is found that the evidence properly admitted justifies the decree it ought to be affirmed, and if not it ought to be reversed. Weems v. George, 13 How. 196, 14 L. Ed. 108; Mammoth Min. Co. v. Salt Lake Machine Co., 151 U. S. 447, 14 S. Ct. 384, 38 L. Ed. 229; West v. East Coast Cedar Co. (C. C.) 110 F. 725; Streeter v. Sanitary Dist. of Chicago, 133 F. 124, 66 C. C. A. 190; Ware v. Pearsons, 173 F. 878, 98 C. C. A. 364. In all these and many other cases the rule laid down by Chief Justice Marshall in Field v. United States, 9 Pet. 202, 9 L. Ed. 94, has been followed:

" 'As the cause was * * * not tried by a jury, the exception to the admission of evidence was not properly the subject of a bill of exceptions. But if the District Court improperly admitted the evidence, the only effect would be that this court would reject that evidence, and proceed to decide the cause as if it were not on the record. It would not, however, of itself constitute any ground for a reversal of the judgment.' "

As to the second question, we are of the opinion that the five findings of fact showing negligence on the part of appellant, as made by the judge below, all bear directly upon the charge in the information that the appellant by his willful negligence permitted the escape of the prisoners. This is certainly true as to the third, fourth, and fifth findings, any one of which would be sufficient upon which to base the judgment.

The particularity required of an indictment is not necessary in an information upon a contempt charge. Swepston v. United States (C. C. A.) 251 F. 205; Clark v. United States (C. C. A.) 61 F.(2d) 695. The appellant was fully informed as to the charges against him and had ample opportunity to be heard.

■ There was evidence to the effect that the appellant, as sheriff, through a corrupt political agreement, appointed Thornton as day jailer and that at the time of the appointment he knew Thornton was not capable of performing the duties of the position and was in no way a fit man for the place to which he appointed him; that a number of prisoners in the jail were appointed as trusties and that these trusties were not proper persons to have the authority that was given them in the running of the jail; that visitors were allowed to see prisoners in the jail, including the two who escaped, without any supervision, giving ample opportunity for planning and carrying out the escape that did take place; that the revenue derived from the prisoners in the jail was more than sufficient to have properly run the jail, but that the appellant, for the purpose of appropriating to his own use as much as possible of this revenue, did not secure the proper guarding of the jail; that the appellant admitted that he knew that Mullins and Albert were outlaws and of bad reputation and prisoners that should have had especial attention in keeping them in custody; that the jail was a modern one in every respect and that with proper care the escape would have been impossible; that notwithstanding the fact that the jailers were notified that the two prisoners in question were engaged in an attempt to escape and that a search was made showing this to be true, no vigilance was exercised to prevent the escape. All this evidence is amply sufficient upon which to base the five findings of fact, made by the judge below, against the appellant.

Chapter 7, art. 8, § 2, of the Official Code of West Virginia provides as follows:

"§ 2. *Jailer; Care of Jail.*—The sheriff of every county shall be the keeper of the jail thereof, but he may, with the assent of the county court, appoint a jailer of the said county, and may take from him a bond with security conditioned for the faithful performance of his duties. The jailer may be a deputy sheriff and shall take an oath of office like other officers. He shall keep the jail in a clean and sanitary condition, and shall furnish each prisoner with wholesome and sufficient food, and with clean and sufficient bedding. The jail shall be heated when proper. When any prisoner is sick the jailer shall see that he has adequate medical attention and nursing, and so far as possible keep him separate from other prisoners. A failure on the part of the jailer to perform any of the duties herein required with respect to any prisoner in his jail shall be a contempt of any court of record under whose commitment such prisoner is confined, and shall be punished as other contempts of such court."

Section 8 of the same article provides that:

"§ 8. *Federal Prisoners.*—The jail of any county may be used for the confinement of persons committed thereto under the laws of the United States. The jailer thereof shall receive, keep and discharge such persons pursuant to the commitment, as provided in the laws of the United States. * * *"

In the case of State v. Cyrus, 83 W. Va. 30, 97 S. E. 412, it is held that the sheriff is charged with the absolute duty of keeping prisoners in jail and for his failure to do so is answerable to the court committing the prisoners.

In the case of United States v. Hoffman (D. C.) 13 F.(2d) 269, affirmed (C. C. A.) 13 F.(2d) 278, 279, will be found a discussion of the duties of a sheriff with respect to keeping of prisoners and there it was held that state jail officers, in executing writs of a federal court, are officers of that court and subject to punishment for contempt for disobedience of warrants committing prisoners to their custody. In the Circuit Court of Appeals, for the Seventh Circuit, in discussing the Hoffman Case, Circuit Judge Page said:

"In support of the contention that there was no competent evidence to support the finding of any contempt, plaintiff in error seeks to invoke in his own behalf, as sheriff, the rule that, to justify conviction of a criminal charge, the charge must be proven beyond a reasonable doubt. We are of opinion that a sheriff, called to answer before a court as to the manner of his performance of a lawful order of the court, may not shelter himself behind that rule. * * * Such an officer, with such powers, has never been, in England or America, and should not be, permitted to make many excuses for failure to perform his duties. See Blackstone's Com. vol. 4, par. 130; Wharton's Crim. Law (10th Ed.) vol. 2, c. 33. * * *

"Whether plaintiff in error should legally be excused from responsibility for the malodorous conditions shown, if the evidence

had shown that he did not have personal knowledge of those conditions, it is not necessary for us to decide, nor do we rest our decision upon the proposition that Hoffman's guilt need not be proven beyond a reasonable doubt, because the record affirmatively discloses evidence of matters of which he had personal knowledge sufficient to prove him guilty beyond a reasonable doubt of contemptuous violations of both writs of commitment."

In Swepston v. United States (C. C. A.) 251 F. 205, 208, the court said:

"Nor are we impressed with the objection that the proofs fail to show intent on the part of the contemnors. They were chargeable with knowledge of their legal duties respecting the terms and effect of the order of commitment, and the law imputes an intent to accomplish the natural result of one's own act. Contemnors could not in the nature of things assist the prisoner to escape, except through purposeful disrespect for both the dignity of the court and its order."

See, also, In re O'Rourke (D. C.) 251 F. 768; Ex parte Shores (D. C.) 195 F. 627; Houpt v. State, 100 Ark. 409, 140 S. W. 294, Ann. Cas. 1913C, 690; Hefler v. Hunt, 120 Me. 10, 112 A. 675; Watts v. Commonwealth, 99 Va. 872, 39 S. E. 706; State v. Lewis, 113 N. C. 622, 18 S. E. 69.

"As a general rule, whenever an escape is shown, the law implies negligence on the part of the officer de jure, and the burden of showing that the escape was not negligent rests upon the custodian suffering the escape. * * * The burden of proof is on the state to show that the prisoner was lawfully committed to the custody of the officer, and that he escaped or was attempting to escape; but when the state proves the escape of the prisoner and the lawfulness of the custody, the burden of proof is shifted to defendant." 21 Corpus Juris 842, Escape, § 51.

" * * * Whenever an escape is shown, the law implies negligence on the part of the sheriff in whose custody the prisoner has been placed, and it is not necessary for the state to prove negligence to procure a conviction." 10 R. C. L. 591, § 18.

"It is a well-established principle that in a case of criminal contempt the trial court must be convinced of the guilt of the accused beyond a reasonable doubt, and evidence showing guilt resulting in a finding of such facts cannot be reviewed by an Appellate Court, whose inquiry is limited to the question whether there was any evidence upon which to predicate the finding." Zoline's Federal Criminal Law and Procedure, vol. 1, p. 427, § 522, Degree of Proof.

In Oates v. United States, supra, this court held that to convict in the case of criminal contempt, the trial court must be convinced of the guilt of accused beyond a reasonable doubt, but when there was evidence showing guilt, the finding of facts by the District Court cannot be reviewed and we held to the same effect in the case of Schwartz v. United States, 217 F. 866.

The right of a court to have the sentences imposed by it executed is inherent and is necessary to the administration of justice. Without this right and without the power to punish, and have the punishment carried out, courts would be impotent and could not function. If officers of the law to whom the custody of prisoners sentenced to imprisonment are negligent in the performance of their duties and through such negligence the prisoners are permitted to escape, then the negligent officers are clearly guilty of contempt of the court that committed the prisoners to their charge for safe keeping.

Applying the principles laid down in the Sinclair Case, supra, we find in the record ample evidence to support the conclusion of the trial judge as to appellant's guilt. The judgment is accordingly affirmed.