**UNITED STATES ex rel. BOWLES, Price Administrator, v. SEIDMON et al.**

No. 8882.

Circuit Court of Appeals, Seventh Circuit.

March 19, 1946.

Rehearing Denied April 8, 1946.

Louis M. Mantynband, George L. Siegel, and Melvin A. Garretson, all of Chicago, Ill. (Sidney R. Zatz, of Chicago, Ill., of counsel), for appellant.

Robert B. Johnstone, Francis L. Zimmermann, and George Leonard, all of Chicago, Ill., and Fleming James, Jr., of Washington, D. C., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

Defendants appeal from a judgment of the District Court imposing fines of $5,000 on each of them for contempt for violation of two preliminary injunctions theretofore issued by it on complaint of the Administrator of the Office of Price Administration.

The prosecution for criminal contempt was initiated by the filing on March 9, 1945, of a request for prosecution of appellants and three others, and an affidavit of one Ben Cook, an employee of the Chicago Regional Office of the O.P.A. The court appointed counsel and issued its rule to show cause why all the defendants named should not be held guilty of contempt by reason of their disobedience of its injunctional orders. Two of the defendants were dismissed on motion of the Government at the beginning of the trial, and a third, on her own motion at the close of the Government's case.

Appellants and two others are co-partners engaged in the business of buying, selling and shipping scrap iron and steel at two yards, one known as the Morse Steel Company, and the other, the Reliance Steel Supply Company. In 1943, two preliminary injunctions were obtained against the four partners, differing only as to the name of the company involved. After reciting the fact of violations of the provisions of section 4 of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 904, by offering to sell a carload of iron and steel scrap at a price in excess of the maximum price for that commodity by Revised Price Schedule No. 4, the order provided:

"It Is Therefore Ordered that the defendants * * * co-partners doing business as * * * be and they are hereby enjoined until further order of court, from directly or indirectly selling, delivering, or offering for sale or delivery, iron and steel scrap at prices in excess of the maximum prices therefor as established by the Price Schedule, as heretofore amended."

The particular practice proved in the proceedings for injunction, the continuation of which was shown by evidence adduced in the contempt proceeding, is one known to the trade as "top dressing." It consists of partially loading a car with undergrade scrap, not of a quality or not so prepared as to qualify it as the material ordered, in this case, "No. 2, heavy melting steel," and then covering the whole with a layer, varying in thickness from a few inches to a foot or so, of the superior material actually ordered. The affidavit accompanying the request for prosecution set forth twelve instances in which this practice had occurred after the issuance of the injunctional orders of 1943. In each case, the mill to which the cars had been delivered had rejected the undergrade material which varied from 73,920 out of a total of 77,600 pounds, to 21,000 out of a total of 89,500 pounds, but in all except two cases amounted to more than 50% of the entire contents of the car. The evidence showed that it was the practice for the mills to conduct a preliminary inspection at which time the carload was tentatively graded, subject to more thorough inspection upon unloading, at which time the buyer was entitled, under the contract, to reject any undergrade material found, or to retain it and pay for it at the price provided for the grade. The evidence also showed that, while the accidental inclusion of some undergrade material often occurred, the per-

centage was low, around one or two per cent or perhaps up to ten per cent, according to the witnesses, and never as much as 50%.

The order to show cause recited that it appeared from the affidavit thereto attached that defendants had knowingly, wilfully and intentionally *sold, transferred* and *delivered* steel scrap at prices in excess of the maximum prices established therefor, and then directed them to show cause why they should not be found guilty of criminal contempt of the court by reason of the disobedience of the preliminary injunctions theretofore referred to, and punished for said criminal contempt. Appellants' principal contention is that there is a variance between the charge of the rule to show cause, that they *sold,* and the evidence, which shows that there was no *sale* in excess of the ceiling prices, and, as established by this record, there was not even an offer to sell at excess prices since it is the practice of the trade for a mill to make its own determination of grade, and the shipper is paid only after final inspection by the mill and in accordance with its determination of weight and grade which controls the transaction regardless of the data supplied by the broker's or shipper's notice of shipment.

In rendering its decision in this cause, the court stated its reasons orally:

"It is striking that the evidence at the time of the trial on the rule to show cause, the citation for contempt, was almost a duplicate of the evidence or similar evidence which this same Court heard at the time of the original injunction.

"Now, it may be true, in the technical application of the law of sales, that you did not have an actual consummated sale until the weights were in and the quality of merchandise determined by the mill to which it was shipped, and the actual settlement contract effected between the broker and the mill and subsequently the shipper.

"Nevertheless, the injunction of this Court was issued at the request of the Government, with a view to protecting the enforcement of the Regulation deemed essential by the Congress of the United States in the war effort.

"At the time that this Court heard the evidence and issued its original injunction, the practice there condemned by this Court, which was the practice of attempting to pawn off material, lower grade metals, as higher grade metals to these mills.

"Now, it is true that if the mill is very cautious about it, as unquestionably they are in most instances, that the shipper won't get away with it too often. We don't know how often he does get away with it. The proof has here established that he has not gotten away with it in some instances. Whether he has in others depends largely, I imagine, upon how crowded the mill might be at that particular time, and how careful is the inspection made by the mill's inspectors.

"Now, as an item of defense, there is advanced, other than the technical construction of the regulations of the OPA, that this lower grade metal, lower than that which is called for in the shipping notice and the order, may have by accident got into the various shipments concerned here, the twelve shipments.

"That is largely ruled out, in fact entirely ruled out, by the testimony of the experts who appeared here and testified at least to the degree to which the inferior metal is found in shipments involved here.

*   *   *   *   *

"I believe in this case the Government has proved beyond a reasonable doubt that the defendants, in the twelve instances attached to the order to show cause have engaged in the same reprehensible practice that they engaged in at the time of the Court's granting the injunction in the first place, and accordingly I find them guilty of contempt of this Court and the violation of this Court's injunction in the twelve instances referred to, * * *."

■ The record on this appeal amply supports the court's analysis in every respect, and we find no error in it. While it is true that the rule to show cause recited the fact of sales, it must also be noted that the affidavit attached thereto set up the actual facts relating to the twelve cars, and the order charged violation of the injunctions, not the sales. Due process of law requires that the rule should contain enough to inform a defendant of the nature and particulars of the contempt charged. Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767. However, the particularity required of an indictment is not necessary for an information charging contempt, and technical accuracy is not required. Cyclopedia of Federal Procedure (2d Ed.) Vol. 14, § 7259; United States v. Lederer, 7 Cir., 140 F.2d 136; Fanning v.

United States, 4 Cir., 72 F.2d 929; Conley v. United States, 8 Cir., 59 F.2d 929. We are convinced that the rule and accompanying affidavit were ample to satisfy the requirements of due process.

■ It is clear, as stated by the District Court, that the record shows that appellants engaged in the identical practices condemned and forbidden by the injunction. Hence the defense in the proceeding here involved in fact amounts to an attack on the injunctions. However, the propriety of an injunction can never be tested by an appeal from a subsequent judgment in contempt. See Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550; Clarke v. Federal Trade Commission, 9 Cir., 128 F.2d 542; Brougham v. Oceanic Co., 2 Cir., 205 F. 857.

■■ We agree with appellee that the proof of appellants' responsibility and participation in the violations of the injunctions was direct and showed that they were guilty beyond any reasonable doubt, and we find no error in the finding by the court of their guilt, nor in the amount of their fines.

Judgment affirmed.