## In re GROVE.

### (Circuit Court of Appeals, Third Circuit.   July 14, 1910.)

#### No. 1,368.

1. CONTEMPT (§ 66*)—REVIEW—WRIT OF ERROR.
    Where, in proceedings to punish a witness for contempt, a fine of $1, payable to the United States was assessed, the case was one in which the fine was punitive, in vindication of the authority of the court, and not compensatory to the complainants in the principal cause, and hence the judgment was reviewable on a writ of error.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 223;  Dec. Dig. § 66.*]

2. CONTEMPT (§ 66*)—WRIT OF ERROR—REVIEW.
    On a writ of error to review a judgment assessing a fine against a witness for contempt of court, only questions of law can be considered.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 232;  Dec. Dig. § 66.*]

3. CONTEMPT (§ 66*)—WRIT OF ERROR—REVIEW—ASSIGNMENTS OF ERROR.
    On a writ of error to review a judgment assessing a fine against a petitioner for contempt of court, only such questions can be considered as are presented in the assignments of error each of which must be founded on some alleged defect in the record of the case, except as to proceedings reviewable under Court of Appeals rule 11 (150 Fed. xxvii, 79 C. C. A. xxvii) declaring that the Court of Appeals, at its option, may notice a plain error not assigned.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 232;  Dec. Dig. § 66.*]

4. CONTEMPT (§ 66*)—WRIT OF ERROR—EVIDENCE—BILL OF EXCEPTIONS.
    Evidence taken in a criminal case is no part of the record unless brought into the record by some method known to the law.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 231;  Dec. Dig. § 66.*]

5. CONTEMPT (§ 66*)—RECORD—STIPULATION IN PLACE OF BILL OF EXCEPTIONS.
    A stipulation, in aid of a writ of error to review a judgment in a contempt proceeding, that the papers mentioned therein should "constitute the record" on the writ of error in connection with the certificate of the clerk that the printed volume was a true and faithful copy of the original pleas and proceedings in the case as per the stipulations of the counsel was sufficient to take the place of a bill of exceptions.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. § 231;  Dec. Dig. § 66.*]

6. CONTEMPT (§ 66*)—WRIT OF ERROR—REVIEW—ASSIGNMENTS OF ERROR.
    Assignments that the court erred in entering the order adjudging petitioner guilty of contempt and alleging error in the refusal of the court to deny the order, while not sufficiently specific to conform to the best practice, were sufficient to justify the inspection of the record by the appellate court to ascertain whether there was any apparent error.
    [Ed. Note.—For other cases, see Contempt, Dec. Dig. § 66.*]

7. WITNESSES (§ 21*)—SUBPŒNA—REFUSAL TO OBEY—CONTEMPT.
    In a suit against the C. Company for patent infringement in the construction of certain torpedo boat destroyers for the United States, a request was made to the Secretary of the Navy for a certified copy of the plans and specifications filed by defendant in connection with its bid in so far as they related to the construction of the turbine propelling machinery, etc.   The Secretary replied that the furnishing of such information was considered detrimental to the interest of the United States,

whereupon the request was recalled by the court after which a subpœna was served on petitioner, who was defendant's president, requiring him to produce before the examiner the plans, drawings, specifications, and other illustrative and descriptive papers, relating to the construction of such vessels. It was shown that the Navy Department had taken elaborate precautions to keep these plans and papers secret, and petitioner, in response to the subpœna, produced them sealed, but refused to permit them to be opened on the theory that to do so would be detrimental to the interests of the United States, and would expose trade secrets not patented. At a subsequent hearing a statement by the Navy Department was filed reciting that while it was unwilling, for reasons affecting public interest, to furnish copies of the papers asked for, yet so far as it· was concerned, if the papers were put in evidence, otherwise than by the act of the Department, the making public thereof would not cause the discovery of military or other secrets detrimental to the public interest. *Held*, that the petitioner's refusal to disclose such documents while unsustainable, was not contumacious, and was not punishable as for contempt of court.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 40; Dec. Dig. § 21.*]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Proceedings to punish Henry S. Grove for contempt of court. From a judgment assessing a fine (176 Fed. 925), he brings error. Reversed.

Clifton V. Edwards, for plaintiff in error.
Richard N. Dyer, for defendants in error.

Before BUFFINGTON and LANNING, Circuit Judges, and BRADFORD, District Judge.

LANNING, Circuit Judge. This case comes before us on a writ of error to the Circuit Court of the United States for the Eastern District of Pennsylvania. The matter sought to be reviewed is an order of the Circuit Court adjudging Henry S. Grove guilty of contempt of that court for having refused to produce before the examiner, in response to a subpœna duces tecum, issued in the patent infringement case of International Curtis Marine Turbine Company and Curtis Marine Turbine Company of the United States v. William Cramp & Sons Ship & Engine Building Company, certain documents called for in the subpœna. The penalty imposed by the court was a fine of $1 payable to the United States of America. The case is therefore one in which the fine was punitive and in vindication of the authority of the court, and not compensatory to the complainants in the principal cause. It follows that the order of the Circuit Court is reviewable on a writ of error. Bessette v. W. B. Conkey Co., 194 U. S. 324, 24 Sup. Ct. 665, 48 L. Ed. 997; Id., 133 Fed. 165, 66 C. C. A. 291; Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072. At the threshold of the case, however, we are confronted with an objection by the Curtis Companies, defendants in error, hereinafter called the complainants, that the assignments of error rest on no bill of exceptions or other proceeding presenting for review any

question of law. It is contended, therefore, that on this ground the writ of error should be dismissed.

The so-called record before us is a printed volume containing the bill of complaint in which the complainants charge that the defendant therein named, William Cramp & Sons Ship & Engine Building Company, is infringing certain of the complainants' patents, the answer of the defendant, the replication, notice of motion to punish Henry S. Grove, president of the defendant company, for contempt, the evidence taken in the principal cause up to the time of serving the notice, ex parte affidavits taken on behalf of the complainants for use on the hearing of the motion, ex parte affidavits taken on behalf of Grove for use on said hearing, the opinion of the Circuit Court, the order adjudging Grove in contempt, the petition for a writ of error, the assignments of error, the writ of error and the citation. There is no bill of exceptions, nor is there any statement signed by the judge who heard the matter certifying that the volume contains a true copy of the record of the cause heard by him. There is, however, a stipulation signed by counsel that the papers above mentioned "shall constitute the record sur writ of error of Henry S. Grove" in the case, and there is a certificate of the clerk of the Circuit Court that the printed volume is a true and faithful copy of the original pleas and proceedings in the case as per the stipulation of the counsel.

A contempt case like the present one, where the fine imposed is payable to the United States, and where the party adjudged in contempt is not a party to the cause in which the contempt occurs, is in its nature a criminal and not a civil proceeding. The judgment is final. For these reasons it is reviewable on a writ of error. There is no reason for assuming that the practice in prosecuting a writ of error in such a case differs from the general practice in such prosecutions. Nothing but questions of law can be considered. These questions must be presented in the assignments of error, and each assignment of error must be founded on some alleged defect in the record of the case. The only authority for departing from this practice is contained in the eleventh rule of this court (following the thirty-fifth rule of the Supreme Court [11 Sup. Ct. iii]) which declares that the court, at its option, may notice a plain error not assigned. A writ of error addresses itself to any defect apparent on the face of the record provided the defect be pointed out in the assignment of errors, but the evidence taken in a cause is no part of the record unless, by some method known to the law, it be imported into the record. "Evidence, whether written or oral, and whether given to the court or to the jury, does not become a part of the record unless made so by some regular proceeding at the time of the trial and before the rendition of judgment. Whatever the error may be, and in whatever stage of the cause it may have occurred, it must appear in the record, else it cannot be revised in a court of error exercising jurisdiction according to the course of the common law. A bill of exceptions undoubtedly is the safest method, as it is the most comprehensive one in its operation; and where the facts are disputed, and cannot be arranged except from evidence admitted under the ruling of the court as to its admissibility, oftentimes it becomes the only effectual mode by which

all the rights of the complaining party can be preserved. On the other hand, where there is no dispute in regard to the facts, and consequently no necessity for any ruling of the court in admitting or rejecting evidence, the same purpose may be safely accomplished by a special verdict, or, according to the rule established in this court, by an agreed statement of facts." Suydam v. Williamson, 20 How. 427, 433 (15 L. Ed. 978). And see, also, Storm v. United States, 94 U. S. 76, 24 L. Ed. 42; Insurance Co. v. Piaggio, 16 Wall. 378, 386, 21 L. Ed. 358.

While we have in the present case no bill of exceptions, we have a record made up by agreement of the parties. The agreement of counsel was not merely that the papers mentioned in their stipulation should be printed in the record, but that they should "constitute the record." The case differs in this respect from Continental Gin Co. v. Murray Co., 162 Fed. 873, 89 C. C. A. 563. In that case there was an agreement that certain affidavits should be printed in the record, but there was no agreement that they should constitute a part of the record, and no bill of exceptions or proceedings of any kind by which the affidavits could have been imported into the record. Consequently, this court, finding in the record only the motion for attachment for contempt, the order to show cause and the judgment, and finding no error in that record, affirmed the judgment. Having a record before us, we turn to the assignments of error. There are but two of them. The first alleges error in entering the order adjudging Grove guilty of contempt, and the second alleges error in the refusal of the court to deny the order. These assignments, though not sufficiently specific to conform to the best practice, are sufficient, we think, to justify our inspection of the record to ascertain whether there be in it any apparent error.

The record shows that on April 4, 1909, the complainants, owner and licensee of certain patents for improvements in elastic-fluid turbines, filed their bill of complaint charging the defendant with infringement of the patents. Issue was joined by the filing of answer and replication. While the complainants were taking their proofs before the examiner they applied to the Circuit Court, and obtained from it a request addressed to the Secretary of the Navy that, if not inconsistent with the public interests, a certified copy of the plans and specifications filed by the defendant with the Navy Department for the building of two certain torpedo boat destroyers, in so far as said plans and specifications related to the construction and conditions of operation of the turbine propelling machinery, and including any papers submitted by the defendant in addition to the plans and specifications explaining the construction or conditions of operation of the so-called Zoelly turbine, be furnished to the counsel for the complainants. Subsequently, the Secretary of the Navy replied that, in his opinion, "the furnishing by the Department of the Navy to the complainants herein of the documents in the said request of the court concerning the Zoelly turbine engine would be detrimental to the interests of the United States." Thereupon the Circuit Court recalled and vacated its request.

The complainants then served upon Henry S. Grove, president of the defendant company, a subpœna requiring him to produce before the examiner "the plans, drawings, specifications, and other illustrative and descriptive papers, copies of which were submitted by the defendant to the Secretary of the Navy of the United States and filed in the Navy Department of the United States relating to the construction and operation of the steam turbines which the defendant contracted with the United States to make and sell by contracts dated October 1, 1908, covering the construction of torpedo boat destroyers, Nos. 30 and 31, and including the plans or drawings relating to such steam turbines, copies of which have been filed in the Navy Department under section 'sixth' of said contracts." A package of papers, under seal, containing, it was said, all the documents called for by the subpœna, was produced before the examiner by Mr. Grove, but, under advice of counsel, he refused to permit the package to be opened or the contents to be examined until after the court had passed on the following objections to the disclosure:

"1. The papers in question are privileged communications by the defendant to the United States Navy Department, and the disclosure thereof to the complainant, and to the public, would be prejudicial to the interests of the United States in that it would disclose military secrets, and be detrimental to the interests of the government, and would be prejudicial to the defendant's interest, in that it would disclose trade secrets and features of design not covered by and having no relation to the patents in suit.

"2. The Secretary of the Navy, through the United States District Attorney, has already filed in this court a return to a request issued by the court to the Navy Department, for copies of the documents in question, which return certifies that the furnishing of the documents would be detrimental to the interests of the United States.

"3. There is no connection between the patents in suit, or either of them, and the documents in question, and it does not appear that the complainant is not in position to prove any alleged act of infringement without resorting to the necessity of disclosing to the complainant the trade secrets and designs of the defendant.

"4. That the turbine machines of the complainant have not proven to be successful in commercial practice, and the only apparent result of compelling a disclosure of the documents in question would be to enable the complainant to obtain possession of the features of design worked out by the defendant at defendant's expense.

"5. That the documents in question relate wholly to work done for, and on behalf of the United States government in the building of government war vessels and the court is without jurisdiction to order an injunction against the United States government or the defendants acting as agents of the government in the building of such vessels, and being without jurisdiction to issue an injunction against the government, and the government having declined to give copies of the drawings upon the ground that the same would be prejudicial to the interests of the government, the court ought not now to compel a disclosure to the complainant of the documents in question.

"6. That the documents called for are merely secondary evidence, the originals being on file in the United States Navy Department."

The record of the case further shows that in June, 1908, the Navy Department advertised for bids for building 10 torpedo boat destroyers, and addressed a letter to the defendant stating that if it desired data on which to submit bids the Department would forward them "with the understanding that the information contained therein is to

be regarded as strictly confidential." The defendant requested the information and it was forwarded with this statement:

"All of the above information is to be considered *strictly confidential* (Italics by the Navy Department), and is to be used solely for the purpose of preparing estimate of cost as a basis of bids, and the Department expects and requires that the William Cramp & Sons Ship & Engine Building Company take all possible precautions to prevent any of the plans, specifications or other information pertaining to these vessels being seen by any unauthorized person, and especially by any person not a citizen of the United States; and the copying of the plans, specifications, or other data is prohibited."

On September 1, 1908, the defendant returned to the Department the plans and specifications previously forwarded to it, and also submitted to the Department its own plans and specifications for the work to be done. The Department accepted the defendant's bid, upon the defendant's plans and specifications, for 2 of the 10 destroyers, and forwarded to it the plans, specifications, and instructions for the work, with this notice:

"You will also please note the Bureau's instructions regarding the confidential nature of these plans and specifications, and will exercise every possible precaution to prevent unauthorized persons, and persons not citizens of the United States, from having access to same or to any other information concerning this vessel. You will also take receipt in duplicate from your employés to whom copies of the specifications may be intrusted, forwarding these receipts to this office for record. The blank receipts for this purpose are bound in each copy of the specifications."

The notice also required that the specifications be returned to the Navy Department on the completion of each vessel.

Upon the action of Mr. Grove in refusing to allow the sealed package containing the specifications and other papers to be opened before the examiner, the complainants moved to have him adjudged guilty of contempt. On the hearing of that motion it was contended on behalf of Mr. Grove that it "would be detrimental to the interest of the United States" to compel the production of the papers. The Circuit Court thereupon continued the further hearing of the motion for a period of two weeks in order to afford the Navy Department an opportunity to inform the court whether the plans and specifications could be put in evidence without causing the discovery of military or other secrets detrimental to the public interest. (See opinion, 176 Fed. 925.) At the next hearing the Secretary of the Navy had caused to be filed with the court a statement that the Navy Department is "unwilling, for reasons affecting public interests, to furnish the copies asked for in this case, but that, so far as it is concerned, if the papers referred to above are put in evidence otherwise than by the act of the Department the making public thereof would not cause the discovery of military or other secrets detrimental to the public interests." Thereupon the circuit court adjudged Grove guilty of contempt, and ordered him to pay the above-mentioned penalty of $1.

The objection that the production of the papers called for will disclose military or other secrets of the United States detrimental to the public interests is disposed of by the statement of the Secretary of the Navy that their production will not cause such disclosure. The objec-

tion that no injunction can be awarded in the principal case because of the government's interest in the construction of the torpedo boat destroyers, and that for that reason the papers ought not to be produced, is invalid because it presents a question which can be properly considered only on final hearing of the principal case. The objection that the complainants' turbines have not proven successful in commercial practice requires the weighing of evidence, which we cannot do on a writ of error. The objection made in the brief on behalf of Grove that the complainants have no right to the disclosure because they have not proven title to the patents is answered by the fact that their proofs are not yet closed.

The only remaining objection needing special notice is the one that the production of the papers called for in the subpœna would disclose trade secrets of the defendant and features of design, not covered by and having no relation to the patents sued on. The subpœna is very broad in its terms. It calls not only for the plans, drawings, and specifications for the work on the steam turbines, but for "other illustrative and descriptive papers copies of which were submitted by the defendant to the Secretary of the Navy." It seems to us quite possible that a wholesale production of the papers thus called for will give to the complainants information not material to the issues in the patent suit and which Grove, as president of the defendant company, ought not to be required to disclose. John F. Metten, the defendant company's chief engineer, makes the following statement in his affidavit:

"Defendant's engineers, under my direction, carefully and with great expenditure of time and effort designed, proportioned, and calculated, with a view to meeting the peculiar conditions existing, each part of the turbines for destroyers 30 and 31, and the turbines for these destroyers as designed by defendant's engineers include many entirely new and extremely valuable features of construction and also of design, proportion, and calculation. Many of these features cannot be protected in any other way than by maintaining secrecy regarding them. As long as kept from the public they are of great value to the defendant, but if disclosed other manufacturers could copy them without redress to defendant. Defendant therefore has exercised unusual care to prevent such features from losing their secret character, and the same are not known outside the defendant company so far as I know. Many of the features above referred to are shown in the drawings and papers covered by the subpœna duces tecum served upon Mr. Grove, and a disclosure of such papers would necessarily carry with it a disclosure of said features."

On the other hand, Mr. Livermore, who, in his affidavit for the complainants, states that he has compared the construction and mode of operation of the turbines proposed to be constructed by the defendant, as that construction and mode of operation are described by two witnesses who have seen the plans on file with the Navy Department, with one of the Curtis patents in suit, declares that in his opinion the defendant's turbines, as thus described, show infringement of that Curtis patent. He gives his reasons for his opinion. We think that at least some of the papers called for by the subpœna, which we understand are copies or duplicates of those filed with the Navy Department, will show facts material to the issue. In such circumstances, what should the court do to secure for the complainants the production of

evidence material to their case without unnecessary disclosure of the defendant's trade secrets?

In 3 Wigmore on Evidence, § 2212, it is said:

"In an epoch when patent rights and copyrights for invention are so easily obtained and so amply secured, there can be only an occasional need for the preservation of an honest trade secret without resort to public registration. Such instances do occur, but an object of the patent and copyright laws is to render them as rare as possible, and the presumption should be against their propriety. In other words, a person claiming that he needs to keep these things secret at all should be expected to make the exigency particularly plain. In the next place, the occasion for demanding such a privilege arises usually in actions where the party claiming it is one charged with infringing the rights of another by fraudulent competition in business, and the existence of the fraud can be proved only by investigating the claimant's methods of business. In such cases it might amount practically to a legal sanction of the fraud if the court conceded to the alleged wrongdoer the privilege of keeping his doings secret from judicial investigation. No privilege at all should there be conceded, although as much privacy as possible might be preserved by compelling disclosure no farther than to the judge himself, or to his delegated master or auditor, if (as is usual) the cause is tried by chancery procedure. * * * What the state of the law actually is would be difficult to declare precisely. It is clear that no absolute privilege for trade secrets is recognized. On the other hand, courts are apt not to require disclosure except in such cases and to such extent as may appear to be indispensable for the ascertainment of truth. More than this, in definition, can as yet hardly be ventured."

In Edison Electric Light Co. v. United States Electric Lighting Co. (C. C.) 45 Fed. 56, it appears that certain documents required by a subpœna duces tecum to be produced before the examiner in a patent suit were brought into court, and Judge Lacombe directed that they be delivered to the examiner. "When any one of them is called for by the defendant," said he, "if objection to its exhibition is made by counsel for complainant, the examiner will certify the objection to the court and send therewith the document itself. Thereupon the court will rule upon the objection." It seems to us this practice might be adopted in the present case, for we do not understand that the rule of practice prescribed in Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521, exempts a federal court from the duty of protecting a witness who may be called on to give evidence clearly privileged and not material or relevant to the issue. See Dowagiac Mfg. Co. v. Lochren, 143 Fed. 211, 214, 74 C. C. A. 341.

After Grove had produced the sealed package before the examiner, he was asked the following questions to which he made the following answers:

"Q. This sealed package which you have produced here contains, as I understand you, all the papers called for by the subpœna except the plans or drawings filed under section 6 of the contract? A. I am informed and believe that this package contains all the papers filed in connection with the bid and all of the drawings relating to the steam turbines filed subsequent to the bid under section 6 of the contract. Q. Your understanding is, then, that this package contains all the papers called for by the subpœna? A. Yes. Q. Do you decline to have these papers inspected at the present time and put in evidence by complainants' counsel? (Defendant's counsel advises the witness that he is entitled to decline to have the papers examined until this question has been passed on by the court.) A. Under ad-

vice of counsel I decline to have the papers examined until ordered to do so by the court."

There was no absolute refusal to permit the papers to be introduced in evidence. The attitude of the witness, in view of the Navy Department's repeated injunctions to keep strictly confidential the information contained in these papers, and in view, also, of the fact that the Secretary of the Navy had filed with the court the above-mentioned statement that the furnishing of the information requested by the court would be detrimental to the interests of the United States, and that the court had thereupon recalled its request, was reasonable and highly proper. It does not appear that he has in any wise contemned the authority of the court. On the contrary he expressly submitted himself to its authority. It is said in the brief of the complainants that after the circuit court had concluded that the papers should be exhibited to complainants' counsel, the complainants' counsel suggested that an order directing the examiner to disclose the papers would be sufficient, but that the defendant's counsel insisted that an order adjudging contempt be made to the end that a writ of error might be sued out. We do not, however, find anything in the record to support the statement that the defendant's counsel assumed any such position. The order in the printed volume overruling the defendant's objections to the disclosure of the papers and directing Grove to appear before the examiner for further examination, is not signed, is not mentioned in the stipulation of counsel specifying the papers that should constitute the record, and therefore is no part of the record. Indeed, when the case came first before the court, on the facts as they existed when Grove was before the examiner, the court itself seems to have doubted whether it was Grove's duty to submit the papers for inspection, for the hearing was continued for two weeks in order to learn further from the Navy Department what its position in the matter really was. It was not until after the reply of the Department came, qualifying in a very material respect the answer it had previously given to the court's request for copies of the papers, that the court concluded that the papers should be submitted to complainants' counsel.

We think the case is not one of contempt, and the order is reversed, with costs.