### SWEPSTON v. UNITED STATES (two cases).

#### (Circuit Court of Appeals, Sixth Circuit. May 7, 1918.)

#### Nos. 3033, 3034.

1. **CONTEMPT 🔑72—PLACE OF IMPRISONMENT—FEDERAL PRISONERS.**
   Under Rev. St. Ohio, § 7381, enacted pursuant to recommendation of Congress, making it the duty of sheriffs to receive and keep prisoners of the United States until released by due process of law, a federal court may lawfully sentence one convicted of contempt to imprisonment in a county jail in Ohio.

2. **COURTS 🔑405(10)—CONTEMPT—ORDER IMPOSING PUNISHMENT—REVIEW.**
   Final orders imposing punishment for contempt are criminal in their nature, and reviewable by federal Circuit Courts of Appeals on writs of error, upon which matters of law only can be considered.

3. **CONTEMPT 🔑63(4)—ORDER IMPOSING PUNISHMENT—CONSTRUCTION.**
   An order sentencing a sheriff to jail for contempt for assisting in the escape of a prisoner committed to his custody necessarily involves a finding that the acts charged were intentional.

4. **CONTEMPT 🔑58(4)—DEFENSES—ANSWER UNDER OATH.**
   A disavowal on oath by a person charged with contempt of any intention to commit a contempt is not a complete defense in a federal court, but the whole matter is for determination by the court.

---

🔑For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. CONTEMPT ⊚⇒66(7)—PROCEEDING FOR PUNISHMENT—RECEPTION OF EVIDENCE.
    In a proceeding for contempt tried by the court, the admission of evidence—in itself immaterial or irrelevant is not prejudicial error.

6. CONTEMPT ⊚⇒54(4) — PROCEEDINGS FOR PUNISHMENT — SUFFICIENCY OF CHARGE.
    Under a charge of contempt, in that respondents did conspire with and permit and assist a prisoner committed to their custody to escape, respondents may be found guilty of permitting and assisting in the escape, although the charge of conspiracy is not proved.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Separate proceedings for contempt by the United States against Alonzo Swepston and against Donald Swepston. From orders finding respondents guilty, and imposing punishment, defendants bring error. Affirmed.

Pugh & Pugh, of Columbus, Ohio, G. S. Claypool and John P. Phillips, both of Chillicothe, Ohio, and James I. Boulger, of Columbus, Ohio, for plaintiffs in error.

Stuart R. Bolin, U. S. Atty., of Columbus, Ohio.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. These are contempt cases, and it is sought to have the final order made in each of them reviewed. Charles L. Dye was indicted in the court below for violation of section 16, Act Cong. Feb. 8, 1875 (18 Stat. pt. 3, p. 310 [Comp. St. 1916, § 5966]), and on arraignment the accused entered a plea of guilty. He was sentenced to pay a fine of $2,500 and to be confined in the county jail of Ross county, Ohio, for a period of six months. An order of commitment was entered, June 29, 1916, commanding the marshal to deliver Dye at the jail, and on the same day the order was carried into execution. Alonzo Swepston, as the sheriff of Ross county and custodian of the county jail and the prisoners there committed, received Dye as a prisoner, and of course subject to the terms of the order of commitment. Donald Swepston was at the time a deputy sheriff of Ross county and the keeper of the county jail.

Subsequently, on September 14 and 28, 1916, the United States attorney for the Southern district of Ohio filed two verified petitions, one charging Alonzo Swepston, as sheriff, and the other Donald Swepston, as deputy sheriff, with disobedience of the court's order of commitment of Dye, and with violation of their official duties, the one as custodian, and the other as keeper, of the county jail, and particularly of the prisoner, in that each respondent "did conspire" with Dye, "and permit and connive at and assist" him "to escape from said jail, * * * and * . * *. to be at large and beyond the confines of said county jail," for a substantial part of the time between the date of commitment and the 7th of September, praying in each petition the allowance of an order directing that respondent be arrested and required to answer for contempt of court, because of his violation of the

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

order of commitment. At the times the petitions were presented motions were filed for rules against the sheriff and deputy sheriff to show cause why each should not be attached for contempt of the court, and for violation of the order of commitment under which Dye was placed in the custody of respondents to serve such sentence of six months in the Ross county jail. Each motion was supported by affidavit stating that Dye had not been confined in the jail, but had been "at large upon the streets and in saloons and business houses of * * * Chillicothe and * * * Columbus, and in other villages and cities in said district, and upon the highways in Ross and Franklin counties, * * * driving about * * * in an automobile with friends, and companions. * * * "

The sheriff and deputy sheriff each answered, with the usual verification, denying the charges set out in the petition against him, the sheriff alleging in his answer that the deputy marshal, who brought the prisoner to the jail and delivered the mittimus, stated that he, the deputy, had orders to ask the sheriff to give the prisoner all the liberty and good treatment he could, that the prisoner was being punished wrongfully and would soon be pardoned, and the sheriff further alleging that it was the custom to make trusties of prisoners serving simply jail sentences and to put them at work about the jail and the jail yard; and it is alleged in both answers that Dye was made a trusty and as such given the privileges mentioned, the deputy, however, alleging that as such trusty the prisoner was "permitted to go outside of the jail and yard several times." It is also alleged in each answer that the respondent did not intend to disobey any order of the court, and "did not intend to commit any contempt against the said court or its process."

The court fixed the time and place of trial; the issues made in both proceedings as stated and the evidence adduced thereunder were presented to and heard by the court and in effect were treated as arising in a single cause. Quite a number of witnesses testified in open court in behalf of the respective parties, both respondents also testifying and presenting affidavits. The court delivered an extended opinion, finding that the charge of conspiracy was not sustained, but that both respondents were guilty of "permitting and assisting Dye to escape." Alonzo Swepston was sentenced to the county jail of Delaware county, Ohio, for a period of 40 days and to pay the costs; and Donald Swepston was sentenced to pay a fine of $60 and costs, and to be committed until payment was made; execution of each judgment and sentence was stayed, upon the giving of a prescribed bond, in order to admit of proceedings in error.

[1] It will be observed that the procedure adopted was in accordance with the usual course of contempt proceedings. The order committing the prisoner to the Ross county jail was lawfully made, and was effective to charge respondents with the duty to receive and safely keep the prisoner pursuant to the commitment. Congress at its first session, September 23, 1789 (1 Stat. 96), adopted a resolution recommending—

"to the Legislatures of the several states to pass laws, making it expressly the duty of the keepers of their gaols, to receive and safe keep therein all prisoners

committed under the authority of the United States, until they shall be discharged by due course of the laws thereof, under the like penalties as in the case of prisoners committed under the authority of such states respectively," etc.

Although provision was otherwise made later for cases where states, having once complied with this recommendation, subsequently withdrew their action (1 Stat. 225; 3 Stat. 646; R. S. §§ 5537, 5538 [Comp. St. 1916, §§ 10521, 10522]), yet we fail to find any repeal of the original resolution of September 23, 1789. Ohio enacted a statute many years ago, and still maintains one, requiring each sheriff to "receive prisoners charged with or convicted of crime committed to his custody by the authority of the United States, and keep them until discharged by due course of law." 1 O. G. C. § 3179. See, also, 2 Smith & Benedict's Ohio Rev. Stat. § 7381; 57 O. L. 108, making similar provision, and repealing an earlier act to the same effect of December 20, 1806 (8 O. L. 496, 497).

[2] The power to punish for contempt is inherent in all courts; final orders made and imposing punishment in contempt proceedings are criminal in their nature, and are subject to review in the federal Circuit Courts of Appeals on writs of error. Bessette v. W. B. Conkey Co., 194 U. S. 324, 326, 336, 24 Sup. Ct. 665, 48 L. Ed. 997; Brown v. Detroit Trust Co., 193 Fed. 622, 623, 113 C. C. A. 490, and citations (C. C. A. 6). Counsel for respondents rightly concede applicability of the rule that on writs of error, as here, only matters of law can be considered (Bessette v. W. B. Conkey Co., supra, 194 U. S. at page 338, 24 Sup. Ct. 665, 48 L. Ed. 997; In re Grove, 180 Fed. 62, 64, 103 C. C. A. 416 [C. C. A. 3]; Oates v. United States, 233 Fed. 201, 206, 147 C. C. A. 207 [C. C. A. 4]; Sona v. Aluminum Castings Co., 214 Fed. 936, 942, 131 C. C. A. 232 [C. C. A. 6]; In re Independent Pub. Co., 240 Fed. 849, 862, 153 C. C. A. 535, L. R. A. 1917E, 703, Ann. Cas. 1917C, 1084 [C. C. A. 9]); yet they seek to avoid the effect of this rule by insisting that, when the entire record is considered, it will be found that the evidence is more consistent with innocence than with guilt and that the judgments should be reversed for that reason (Harrison v. United States, 200 Fed. 662, 664, 119 C. C. A. 78 [C. C. A. 6]; Union Pacific Coal Co. v. United States, 173 Fed. 737, 740, 97 C. C. A. 578 [C. C. A. 8]). We cannot accept this view; the evidence clearly tends to sustain the opposite view; the decision of the trial court upon the facts must therefore be accepted as conclusive. Sona v. Aluminum Castings Co., supra, 214 Fed. at page 492, 131 C. C. A. 232; Oates v. United States, supra, 233 Fed. at page 206, 147 C. C. A. 207.

[3] Nor are we impressed with the objection that the proofs fail to show intent on the part of the contemnors. They were chargeable with knowledge of their legal duties respecting the terms and effect of the order of commitment, and the law imputes an intent to accomplish the natural result of one's own act. Contemnors could not in the nature of things assist the prisoner to escape, except through purposeful disrespect for both the dignity of the court and its order. As Mr. Justice Holmes said, in Ellis v. United States, 206 U. S. 246, 27 Sup. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589, when speaking of the de-

fendant's act in permitting his associate in business to employ men for nine hours in violation of the Hours of Service Act (206 U. S. 257, 27 Sup. Ct. 602 [51 L. Ed. 1047, 11 Ann. Cas. 589]):

"If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent."

[4] It is insisted that respondents' disavowals upon oath of any intention to commit a contempt were a conclusive defense. The effect of this is to say that a contemnor, instead of the court, may control the issue, if the contemnor be willing to assume the risk of a charge of perjury later. United States v. Shipp, 203 U. S. 563, 575, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265. Disavowals, it is true, are always material facts, especially as respects questions of punishment; and it is also true that the common-law rule in certain classes of contempt cases permitted the accused to purge himself through answer under oath; but the common-law rule of purgation does not prevail in the federal courts; indeed the settled rule now is that disavowal by sworn answer or otherwise is not conclusive, and that the whole matter is for the court upon the evidence. Globe Newspaper Co. v. Commonwealth, 188 Mass. 449, 453, 74 N. E. 682, 3 Ann. Cas. 761; United States v. Shipp (second hearing), 214 U. S. 386, 405, 29 Sup. Ct. 637, 53 L. Ed. 1041; Oates v. United States, supra, 233 Fed. at page 207, 147 C. C. A. 207; Kirk v. United States, 192 Fed. 273, 279, 112 C. C. A. 531 (C. C. A. 9); United States v. Huff (D. C.) 206 Fed. 700, 703; United States v. Carroll (D. C.) 147 Fed. 947, 951; United States v. Sweeney (C. C.) 95 Fed. 434, 437.

[5] The assignment as to claimed inadmissible testimony must be overruled. Remembering that the proceedings were conducted before the court alone, it was but natural that counsel should be indulged in some latitude in developing facts and circumstances tending to show times and places of the prisoner's absence from the jail. The evident purpose to minimize—indeed in some respects to conceal—such absences made this course necessary; in the end, however, the material facts were obtained; and while some matters heard were apparently irrelevant, and in some instances explained through hearsay, yet in each instance they seem to have led up to ultimate facts that were both pertinent and material. It is not perceived why this course was prejudicial to respondents. It is to be presumed that the court at last considered only the facts and circumstances that were in reality admissible and also calculated to support the judgments claimed; and this was in accord with settled rules of practice in cases tried without a jury. Oates v. United States, supra, 233 Fed. at page 205, 147 C. C. A. 207, and citations.

[6] Since the causes were submitted here upon oral argument, counsel for respondents have by additional brief claimed that the charge upon which they went to trial was that the respondents conspired with Dye to escape from the jail. It is admitted that the charge involved other matters, but the insistence is that the conspiracy was the gist of the charge. True, the conspiracy alleged was not proved; though,

251 F.—14

as already stated, Judge Sater found both respondents guilty of "permitting and assisting Dye to escape." This finding was clearly permissible, regardless of the charge of conspiracy; the fact of permitting and assisting might well have existed, and under the evidence apparently did exist, apart from the alleged conspiracy. Further, the proceedings were not by indictment; they were by petitions to attach for alleged contempt of the process and authority of the court. Respondents themselves regarded the petitions as charging them with assisting to escape, independently of the charge of conspiracy and connivance, since each in his answer specifically denied "that he assisted said Charles L. Dye to escape from said jail."

It is not claimed that the proceedings for contempt were inconsistent, nor were they, with the fact that the acts of respondents were also punishable under either the federal or the state statute defining the duties of jailers in respect of federal prisoners. R. S. § 5409 [Comp. St. 1916, § 10308]; 3 O. G. C. § 12832. However, it is claimed that, if respondents were punishable under those statutes for "permitting and assisting" the prisoner to escape, they were each entitled to a trial by jury in the contempt proceedings. Reliance in this behalf is placed on Act Oct. 15, 1914 (38 Stat. pt. 1, pp. 730, 738, §§ 21 and 22, Comp. St. 1916, §§ 1245a, 1245b), known as the Clayton Act. It is enough to say of this (1) that no demand for a jury was made, and (2) that section 24 of the act expressly excepts from its operation proceedings of the kind here involved. Section 24 provides:

"That nothing herein contained shall be construed to relate to contempts committed * * * in disobedience of any lawful * * * order * * * entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and other cases of contempt not specifically embraced within section 21 of this act, may be punished in conformity to the usages at law and in equity now prevailing." Comp. St. 1916, § 1245d.

The complete answer, then, to the latter contention, is the fact that the order which the contemnors are found to have violated was entered in the case of United States v. Dye.

The judgment in each cause will be affirmed. However, it has come to our attention that Donald Swepston, the plaintiff in error in No. 3034, has been wounded while in the service of the United States in the American Expeditionary Force in France, and that the District Judge has recommended that a pardon be granted to him covering his offense here involved, in which recommendation the District Attorney has joined. Accordingly, our mandate in No. 3034 will await the disposition of this application for pardon, and will be withheld until further order.