· KELTON et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. December 10, 1923. Rehearing Denied January 24, 1924.)

No. 3028.

1. Contempt ⬅️54(4)—Information held to charge contempt though charging combination.

An information charging "an unlawful combination and intention to violate [the] order of the court," but also charging an actual violation, *held* not to charge conspiracy, a crime defined and triable only by jury under Criminal Code, § 37 (Comp. St. § 10201), but a contempt of court.

**2. Contempt ⬳30—Power of court to make order carries with it power to punish for disobedience.**

The power of a court to make an order carries with it power to punish for disobedience of that order, and the inquiry as to the question of disobedience has been from time immemorial the special function of the court.

**3. Contempt ⬳29—Any person knowingly violating order guilty.**

Under Rev. St. § 725, Judicial Code, § 268 (Comp. St. § 1245), any person who, having knowledge of an order of court for destruction of seized liquor, violated it by aiding in diverting and selling the liquor, was guilty of contempt, though the order was not addressed to him.

**4. Contempt ⬳66(7)—Findings of fact conclusive on reviewing court.**

Findings of fact by District Court in contempt case are conclusive on the Circuit Court of Appeals, if sustained by substantial evidence.

**5. Contempt ⬳23—Knowledge of order prerequisite to conviction.**

Knowledge of an order of court is a prerequisite to conviction for contempt of the order.

**6. Criminal law ⬳427(2)—Knowledge of conspirator not admitted until participation shown.**

The knowledge of one conspirator cannot be charged or admitted against an alleged coconspirator until his participation in the conspiracy is shown.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

William A. Kelton and others were found guilty of contempt, and bring error. Affirmed as to some, and reversed as to others.

George Wasser, Charles A. O'Brien, and Stephen Stone, all of Pittsburgh, Pa., C. K. Morganroth, of Shamokin, Pa., and Edmund K. Trent and George H. Rankin, both of Pittsburgh, Pa., for plaintiffs in error.

Walter Lyon, U. S. Atty., and George V. Moore and Arthur W. Henderson, Sp. Asst. U. S. Attys., all of Pittsburgh, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. On petition of William A. Kelton, Group Head of Federal Prohibition Agents at Pittsburgh, Pennsylvania, the District Court ordered the destruction of about two thousand barrels of beer and the sale of the containers. The beer had been seized under the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ et seq.) and stored in warehouses of the Standard Ice & Storage Company and the Allen Storage Company.

Instead of first destroying the beer and then selling the containers in compliance with the manifest purport of the order, Kelton sold the containers when the beer was in them. The purchasers were a lawyer, subsequently tried and convicted but not here on this writ of error, and two others, who, if not wholly fictitious persons, have disappeared. To these nominal purchasers, acting for John Douglas, Jr., and others unknown, Kelton gave orders upon the storage companies for the containers. Each order directed delivery to the named purchaser "or bearer." These were promptly presented by unknown persons and immediately deliveries of the containers with beer still in them were begun at the warehouse of the Standard Ice & Storage Company and

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

later attempted, but frustrated, at the warehouse of the Allen Storage Company. Douglas owned the trucks on which the beer was loaded and carried away, his men were in charge of the transfer and he himself, being present from time to time, participated in the arrangements for the release of the filled containers.

It was represented that the beer, loaded at the Standard Ice & Storage Company, was being conveyed to the property of Douglas, known as the Duquesne Market, to be dumped, when, in fact, (though a small quantity was carried there and destroyed,) the most of it was diverted in transit and sold. When a like attempt was made to get the filled containers from the warehouse of the Allen Storage Company, the officers or employés of that concern refused to honor Kelton's orders and let the containers filled with beer go out unless he should change the orders and make them call for the delivery of the containers "with contents." Kelton refused to make the change and, in consequence, this beer was destroyed at the place of storage.

The District Attorney, by information, instituted these proceedings under Revised Statutes, § 725, Judicial Code, § 268 (Comp. Stat. § 1245), charging the defendants with contempt of court in a willful violation of its order. After trial, conducted as a purely criminal proceeding, the court found all defendants who were tried guilty. Four of them sued out this writ of error. This, we think, is a sufficient statement of the case, as averred and proved, in so far as it relates to Kelton and Douglas. We shall deal with Zimmerman and Dorne later. A recital of the whole story in detail is unnecessary and would perhaps be improper in view of the fact that of the persons involved at least two have not been apprehended and one, though tried and convicted, has not been sentenced.

[1, 2] Douglas vigorously attacked the jurisdiction of the court to entertain this proceeding in contempt on the ground that (as the information in part charges "an unlawful combination and intention to violate [the] order of the court") the charge is, in effect, one of conspiracy, a crime defined by and triable only by jury under section 37 of the Criminal Code (Comp. St. § 10201). We are not impressed with this contention. While the information does charge "an unlawful combination" to disobey the order of the court—a charge amply sustained by what followed—it also charges actual disobedience of the order. If the parties had combined to violate the court's order and had done nothing in furtherance of the combination, they would not thereby have interposed an obstacle to the administration of justice and, accordingly, they would not have been guilty of contempt. But they did the thing they combined to do and, from the very nature of the scheme, combination preceded action. In its contempt proceeding the court was concerned with the objective offense, for by this offense rather than by the mental purpose to carry it out the order of the court was violated. That the court had power thus to vindicate its order cannot be open to dispute. The power of a court to make an order carries with it the equal power to punish for disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the court. In re Debs, 158 U. S. 564, 594, 15 Sup. Ct. 900, 39 L. Ed. 1092. In the case of Ex

parte Robinson, 86 U. S. (19 Wall.) 505, 510, (22 L. Ed. 205) the Supreme Court court said:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power."

Moreover, the power of courts to punish for contempts has been conferred and defined by the Act of Congress under which this proceeding was instituted (supra), and this power by the terms of the statute extends to—

"* * * disobedience or resistence * * * by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts." Comp. St. § 1245.

[3, 4] All the defendants, except Kelton, maintain that they do not fall within any of the classes named in this provision because the order of the court was not addressed to them. To this view we have not been persuaded because the "other person" contemplated by the statute means any person who, having knowledge of the order, violates it. In re Wilk (D. C.) 155 Fed. 943, 944. On the issue of knowledge as it affects Kelton and Douglas and on the other issues affecting them the findings of the trial court are conclusive on this court if they are sustained by substantial evidence. We deem it unnecessary to enter into an extended discussion of the evidence in this opinion. It will be sufficient to state that the record discloses ample testimony to sustain all the court's findings with reference to Kelton and Douglas. This is the limit of our inquiry on review. Bessette v. W. B. Conkey Co., 194 U. S. 324, 338, 24 Sup. Ct. 665, 48 L. Ed. 997; Swepston v. United States, 251 Fed. 205, 208, 163 C. C. A. 361; Kelly v. United States, 250 Fed. 947, 163 C. C. A. 197, certiorari denied, see Galen v. United States, 248 U. S. 585, 39 Sup. Ct. 182, 63 L. Ed. 433; Schwartz v. United States, 217 Fed. 866, 133 C. C. A. 576; Toledo Newspaper Co. v. United States, 247 U. S. 402, 420, 38 Sup. Ct. 560, 62 L. Ed. 1186.

[5] We are, however, not of the same mind with reference to Zimmerman and Dorne. These men were prohibition agents having but recently arrived in Pittsburgh. They were detailed to the warehouses of the two storage companies to superintend the destruction of the beer and the delivery of the sold containers, but not until the day after deliveries had begun. On arriving at the plant of the Standard Ice & Storage Company, Zimmerman and Dorne discovered that beer barrels without beer having first been dumped were being loaded on trucks and carried away. Immediately—and we think quite innocently—they called Kelton by telephone and told him what was being done and asked for instructions. Kelton assured them that the beer was being carried to the Duquesne Market and was being dumped there and instructed them to let the matter go on. It clearly appears that Zimmerman and Dorne took no part in the original unlawful combination. Indeed, the Government admits that until they were thrust into the situation on the second day, Zimmerman and Dorne knew nothing about it. So, obeying the order of their chief, Zimmerman and Dorne

stood by and let the deliveries proceed. They may have believed, as they had been told, that the beer was being hauled to the Duquesne Market and dumped; or, not being stupid, they may have suspected what was afoot. At all events there is no evidence that they had any knowledge that the beer was going elsewhere than to the Duquesne Market for destruction, or that they received or were promised any part of the profits of the transaction. Nor do we find any evidence that they had knowledge of the order of the court under which the beer was being moved—a prerequisite to conviction for contempt of the court's order. And of the same opinion evidently was the trial court because the only knowledge of its order which it imputes to Zimmerman and Dorne was that arising from their participation in the "unlawful combination." Knowledge of the court's order on the part of Zimmerman and Dorne was covered in the opinion of the court by the statement as follows:

"Acting thus in concert to effect a common unlawful purpose, all are charged with the knowledge of each, and the acts and declarations of each become the acts and declarations of all."

[6] Knowledge of the court's order on the part of Kelton and Douglas and intention coupled with action to violate it are amply sustained by evidence, but it is clear—and it is admitted by the Government—that Zimmerman and Dorne took no part in the formation of the unlawful combination to violate the court's order. The knowledge of one conspirator cannot be charged or admitted against an alleged coconspirator until his participation in the conspiracy is shown. Pope v. United States (C. C. A.) 289 Fed. 312. It follows, therefore, that any knowledge of the court's order on the part of Zimmerman and Dorne must have come from sources other than the knowledge within the minds of their co-actors. As we have said, we find no such evidence.

The most damaging thing against Zimmerman and Dorne was their certification to Kelton that the beer had been destroyed when in fact only a part of it had been destroyed. Yet they certified what they had been told and, so far as the evidence shows, what they thought was the truth. At all events, their action was as consistent with the hypothesis of innocence as it was with that of guilt.

We have given the same serious study to this branch of the case that we have given to the other and are of opinion that the evidence does not sustain the court's finding of knowledge of its order on the part of Zimmerman and Dorne or of their willful participation in the unlawful transaction. We regard them rather as tools thrust into the miserable scheme after its performance had begun. While they may have been very dull in not discovering or weak in not disclosing the true situation to someone other than their chief, yet, being on trial for a criminal offense, their conviction cannot stand unless the evidence sustains it.

Therefore, we reverse the judgment of guilt as to Zimmerman and Dorne and direct a new trial. Finding no error in the trial of Kelton and Douglas, we affirm the judgment as to them.