## UNITED STATES

*v.*

## JOSE M. CABRERA, LUIS R. TORRES, AND V. TORRES QUINTERO.

San Juan, Criminal, No. 3271.

Opinion filed June 11, 1924.

*John L. Gay, Esq.,* United States Attorney.

*J. Henri Brown, Esq., Jaime Sifre, Jr., Esq.,* and *Hugh R. Francis, Esq.,* for defendant Luis R. Torres.

*Benicio F. Sanchez, Esq.,* for defendant Jose M. Cabrera.

*Rafael Martinez, Esq.,* for defendant V. Torres Quintero.

ODLIN, Judge, delivered the following opinion:

At the outset of the termination of this unpleasant matter, the court deems it fair to the district attorney to state that the court is in entire accord with the law as cited by the district attorney in three cases, first, the Wilk's Case, reported in 155 Fed. page 943, which simply holds that even though a person has not been formally served with an order of a court, he is liable to be punished for contempt if he violates the order and has actual notice of it. In that case there was a sentence imposed of sixty days in jail, and there is no question as to the correctness of the law, and there is no question that all the parties in this unpleasant controversy had knowledge of the order of this court. Then a very interesting case is cited by the district attorney, reported in 284 Fed. page 604, in which it is held that the power to punish for the wilful violation of an order, duly and properly made, is inherent in the courts independent of legislation. And even though Congress attempted in the Clayton Act to give a jury trial to persons who might be charged with contempt in violating an injunction order of a Federal district court, it was held that Congress had no such

430

power, and that the right of the court to decide the question for itself, without the assistance of a jury, existed and cannot be taken away by Congress. It will be noticed that Judge Call, who punished those parties in the Atchison Case, reported as above stated, in 284 Fed. 604, expressly set forth that there must be a wilful violation of an order and that the court must be satisfied that the parties charged with the contempt were guilty. The latest case cited by the district attorney is that of Kelton v. United States [294 Fed. 491], recently decided by the circuit court of appeals of the third circuit, reviewing on a writ of error a finding by the district judge that numerous parties were guilty of contempt in disobeying an order of the district judge, which order covered the destruction of about 2,000 bottles of beer and the sale of the containers. The circuit court of appeals affirmed the finding of the district judge as to certain of the defendants and reversed it as to others. The circuit court of appeals holds that the power of a court to make an order carries with it power to punish for disobedience of that order, and the inquiry as to the question of disobedience is, from time immemorial, the special function of the court; and it is also held that under the statutes of Congress, any person who has knowledge of an order of court for the destruction of liquor which has been seized, violates it by diverting or concealing the liquor was guilty of contempt of court, whether the order was addressed to such person or not. And it is also held that the findings of fact by the district judge in a case of contempt of this nature are conclusive, provided the same are sustained by substantial evidence.

There is no question as I look at it in this case touching the law. This court signed an order which all parties admitted

the court had a right to sign. The duty devolved upon the marshal of this court to destroy 1881 bottles of liquor, although the number was not stated in the order, but the evidence shows that there were 1881 bottles. The order described the liquor as being the same liquor involved in a certain case against a defendant named Cerecedo, and this sufficiently identified the liquor. The order also provided that the destruction of this liquor should take place in the presence of a representative of the Federal prohibition director. The evidence in this case, and the return of the deputy marshal, Mr. Torres, who is one of the defendants in the present contempt case, shows that only 1862 bottles were actually destroyed. The failure to destroy 19 bottles is the basis of the present proceeding. The launch belonging to the Customs department was used for this purpose and the plan for the destruction involved the transfer of those bottles from the warehouse to the launch, the trip of the launch to the outer portion of the harbor of San Juan, the destruction of the bottles and throwing their contents into the Atlantic ocean. Two trips were necessary. It is quite possible that my view of matters like this are incorrect, but it seems to me that it should be just as practicable to take 1881 bottles of liquor and destroy them all as it would be to carry 1881 silver dollars over to the bank and deposit them all, particularly when you have a deputy marshal in charge of the operation, and another deputy marshal present, and two representatives of the prohibition department.

The testimony which was submitted to the district attorney, given by the men in the launch, one of whom was named Vazquez, and the other his assistant, Ramos, if true showed not only a wilful failure to carry out the order of this court by the

three accused, but what amounted virtually to a stealing of government property. But each of the three accused has taken the witness stand and under oath has denied most positively the statements made by Vazquez and by Ramos, and although they were careful not to charge Vazquez and Ramos under oath with stealing this liquor themselves, they are united in their belief, apparently, that Vazquez and Ramos stole those 19 bottles of liquor, concealed them in the launch, afterwards became afraid that they might be in trouble and manufactured this story in order to relieve themselves of possible prosecution and to make trouble for Torres, Cabrera and Quintero.

This being a quasi criminal proceeding, no judge can hold a man guilty of contempt of court, under a serious charge of this nature, unless he is satisfied beyond a reasonable doubt that the statements of the government witnesses are true and that the statements of the defendants, in case they see fit to testify, are untrue. I will state frankly that it is impossible for me to determine in my mind whether Vazquez and Ramos should be believed or whether they should not be believed. It is a sad thing to sit here and listen to perjury on the part of persons in the employment of the United States government, or in the service of the government of Porto Rico, and be unable to determine which of those parties are telling the truth and which are falsifying, but the court finds itself in that very unpleasant situation at this time. To state the matter in another way, in order to find these three defendants guilty of contempt of court, I would be obliged to hold that the statements of Vazquez and Ramos are true and that the statements of Torres, Cabrera, and Quintero are untrue. I will state frankly that I am not prepared to go as far as that. But I will say this: in

my judgment, the deputy marshal of this court, Mr. Torres, and the two prohibition agents, Mr. Cabrera and Mr. Quintero, were guilty of almost inexcusable negligence if they permitted Vazquez and Ramos to get away with nineteen bottles of liquor on that second trip, or on the first trip, and none of them know anything about it until several hours later. If, in order to enforce the Volstead law, whenever liquor is to be destroyed, Mr. Hubbard and Mr. Barrett must go down to the bay and throw one bottle in the bay at a time, and cannot rely upon competent assistants, the court is placed in a very bad situation, because those officials, Mr. Hubbard and Mr. Barrett, would have no time to attend to their other important duties.

Before closing this decision, I wish to call attention to the unfortunate situation the district attorney is in by reason of what I consider a very bungling manner of seeking to ascertain the really guilty parties. For instance, take the arrest of Cabrera. If the policemen that arrested Cabrera had waited two minutes and watched him and had ascertained whether he was on his way to the office of the prohibition department, in this building, with those five bottles, or going somewhere else with them, this case would have been a very easy one to decide. But they were so impatient and so eager to arrest Cabrera with those five bottles that they arrested him between the place where the launch was moored and the Federal building; therefore, it is impossible for me to say whether Cabrera is telling the truth or not when he states that he found these five bottles accidentally and was on his way to the office in this building with them, so that the matter might be investigated later. In other words, the hasty arrest of Cabrera, instead of assisting

the district attorney in the investigation of this matter, has really impeded him.

It is only fair and just to say that the Insular policemen who made the arrest of Cabrera are not to be blamed or criticized in the least for the manner in which they acted. Through the kindness of the chief of police, these men were placed at the disposition of Mr. Siegmund and they did what they were told to do. Mr. Siegmund, it seems, overlooked the great importance of having Cabrera watched until he entered or passed the Federal building, and this unlucky thoughtlessness on the part of Mr. Siegmund—another upright and zealous public official —will probably make it forever impossible for us to know if Cabrera is a victim of a clever scheme to injure him, or is himself a lawbreaker. I am giving him of course the benefit of the great doubt in my own mind.

Another unfortunate element of this case is that Mr. Hubbard, implicitly believing the story of his man Torres, employed three eminent members of the bar of this court to defend Torres, all three of whom are welcome in this court, but I really think one was sufficient; and on the contrary, Mr. Barrett, an equally zealous official of the United States government, highly interested in this matter, did believe what Vazquez and Ramos stated and relied on their statements as true, and instead of defending his men, Cabrera and Quintero, suspended them immediately. I am not making these statements a part of this decision with the view of criticizing either Mr. Barrett or Mr. Hubbard, but I put these statements in the record to show the great difficulty under which this court lies in deciding this case, and to show that a reasonable doubt does exist, and that there is ground for it.

Furthermore, Mr. Barrett himself went on the first trip of the launch and is almost positive that all the liquor was destroyed. Of course, he cannot know this, but that is his firm conviction. The court regrets very much that Mr. Barrett did not go on the second trip also. But the evidence produced before this court indicates very strongly that part of the liquor seized on Cabrera after his premature arrest was placed on the boat on the first trip and part on the second trip. Of course, this cannot be known positively, but the evidence looks that way and affords another ground why a reasonable doubt exists in my mind touching this matter, because the testimony of Vazquez and Ramos is distinct and positive that the alleged instructions by the three accused to them about this liquor being held back to go to the office and was not to be destroyed, which conversation, of course, these three defendants positively deny, all occurred on the second trip.

In conclusion, I wish to say that this case has been a most unpleasant one for the court. But I do not propose to find any man guilty of contempt of court unless I am satisfied beyond a reasonable doubt that he is guilty. I cannot do it. In the present case the evidence is so contradictory that there is more than a reasonable doubt in my mind, there is considerable doubt, and although the district attorney has acted in the best of faith, I can see that through the negligence of Torres, Cabrera, and Quintero, Vazquez and Ramos might have themselves grabbed nineteen bottles of liquor, may have concealed it in that launch for their own use, and then afterwards became frightened and caused in some indirect way knowledge to be given to Mr. Siegmund and Mr. Barrett and to Mr. Cabrera, by unknown voices on a telephone wire, about there being cer-

tain liquor on that launch and, therefore, conceiving it as quite possible, I am obliged to dismiss this proceeding.

Done and Ordered in open court at San Juan, Porto Rico, this 11th day of June, 1924.